[Civ. No. 42603. First Dist., Div. Three. Mar. 12, 1981.]

SANTA CLARA FEDERATION OF TEACHERS, LOCAL 2393
et al., Plaintiffs and Respondents, v.
GOVERNING BOARD OF SANTA CLARA UNIFIED SCHOOL
DISTRICT et al., Defendants and Appellants.

COUNSEL

Selby Brown, Jr., County Counsel, and Robert T. Owens, Assistant County Counsel, for Defendants and Appellants.

Van Bourg, Allen, Weinberg & Roger, David A. Rosenfeld, Joseph G. Schumb, Jr., and LaCroix & Schumb for Plaintiffs and Respondents.

OPINION

**SCOTT, Acting P. J.**—The Santa Clara Unified School District and its Governing Board (hereafter the Board) appeal from a judgment granting a peremptory writ of mandate directing it to reconsider its actions in terminating 60 certificated employees. Respondents are the United Teachers of Santa Clara, the Santa Clara Federation of Teachers, Local 2393, and a number of individual certificated employees. This is the second appeal in this case.

In March 1975 the Board gave notice to 99 certificated employees, including the individual respondents herein, that it had been recommended that their services would not be required for the 1975-1976 school year, because of a decline in average daily attendance (ADA) and because of a decision to reduce or eliminate particular kinds of services.

The employees requested and were granted consolidated hearings before an administrative law officer (ALO). The ALO issued a proposed opinion, recommending that the board was entitled to terminate 32.8 employees because of a reduction or termination in services, and 7 employees because of the decline in ADA, for a total of 39 employees.

The Board's decision modified that proposed decision; in particular, the Board concluded that it was entitled to terminate 28 rather than 7 employees because of the decline in ADA, for a total of 60 employees. The individual respondents were then given final notices of termination. Petitions for writ of mandate, consolidated for trial, were filed on behalf of 21 certificated employees and by two employee organizations, respondents herein.

On November 4, 1975, the trial court granted the petitions and remanded the matter to the Board, directing it to consider its action in light of the court's findings of fact and conclusions of law. The Board appealed, and on February 15, 1977, Division Four of this district reversed (1 Civ. 38049, Caldecott, J.), holding that the trial court erroneously independently reviewed the decision of the Board as to the termination of the probationary employees. The court remanded for reconsideration under the substantial evidence scope of review. As to three permanent employees, the trial court had properly exercised its independent judgment. The appellate court then concluded that although certain health care positions had been improperly eliminated, the record was unclear as to whether the petitioners' jobs were among those invalidly discontinued. The court remanded that question for reconsideration. The appellate court did not reach the propriety of the trial court's other conclusions. We address those conclusions here, as on retrial the court issued the same findings and conclusions of law, and the Board has again appealed.

Some of the trial court's conclusions upon which the judgment was based were erroneous. We consider seriatim the contentions of error as to each conclusion.

## I. SUFFICIENCY OF THE NOTICE OF TERMINATION

The court concluded that the initial notices of termination were invalid because not sufficiently specific. In March 1975, each individual respondent received written notice that it had been recommended to the Board that his or her services would not be required for the 1975-1976 school year, because of (1) a decline in average daily attendance and (2) because of the Board's decision to reduce particular services. The trial court found these notices invalid, "in that they failed to specify the specific reason for the recommendation for termination of the individual Petitioners."

Former Education Code section 13447 (present § 44955) provides that a school district may reduce its certificated staff because of either (1) a decline in average daily attendance or (2) a reduction or discontinuation of particular services.[1] ■ By March 15 of the year preceding dismissal, the employee must be notified of the district's decision not to rehire. The employee is then entitled to a hearing before an administrative law judge, who prepares a proposed decision which may or may not be accepted by the Board. The Board's final decision to dismiss must be made by May 15. If the employee is not given the notice and right to a hearing as required by statute, he is to be deemed reemployed for the following school year. (Ed. Code, §§ 44955, 44949; *Campbell Elementary Teachers Assn., Inc.* v. *Abbott* (1978) 76 Cal. App.3d 796, 803 [143 Cal.Rptr. 281].)

■ Because the March 15 notice is intended to insure that the affected employee is informed of the facts upon which he can reasonably assess the probability he will not be reemployed, the notice must state the reasons for the recommendation. If the notice specifies only one of the two statutory reasons for dismissal, the Board may not later attempt to justify dismissal on the other ground. (*Karbach* v. *Board of Education* (1974) 39 Cal.App.3d 355, 361-362 [114 Cal.Rptr. 84].) However, a notice which specifies both grounds is sufficiently specific. (*Moreland Teachers Assn.* v. *Kurze* (1980) 109 Cal.App.3d 648, 653 [167 Cal.Rptr. 343]; *Campbell Elementary Teachers Assn., Inc.* v. *Abbott, supra,* 76 Cal.App.3d 796, 804.) The March 15 notice is only the first step in the termination process. *Karbach* does not require that this preliminary notice specify the precise number of teachers to be terminated or the specific positions to be eliminated; those details emerge as the administrative hearing process progresses. It is enough that the Board specify in the March 15 notice the statutory grounds set forth in section 13447 for staff reduction.

II. WHETHER DISTRICT SUPERINTENDENT IS INCLUDED IN COUNT OF CERTIFICATED EMPLOYEES

The Board adopted the proposed finding of the hearing officer that district Superintendent Rudy Gatti was employed under a four-year contract and as such could not be terminated under section 13447, and

[1]Except as otherwise indicated, statutory references are to the Education Code. Its sections were renumbered in the reorganized code which became operative on April 20, 1977. (Stats. 1976, ch. 1010, § 2, p. 2384; Stats. 1976, ch. 1011, p. 4581.)

concluded that Gatti was not to be included in the layoff. However, the trial court found that Gatti was also classified by the district as a certificated employee, and was in effect serving in his first year as a probationary certificated employee. The court concluded that with three exceptions, none of the respondents could be terminated as long as Gatti is employed *and counted* as a certificated employee.

Appellants argue that because certification was not required for the superintendent's position, Gatti was neither a probationary nor permanent employee, and thus was not subject to the provisions of section 13447. However, regardless of district requirements, Gatti was in fact certificated, was progressing toward tenure as a teacher in the district while serving as superintendent, and was counted by the district as part of its current certificated staff in the layoff equation.

Respondents argue that the district should not be permitted to count Gatti as part of its current staff and then skip over him in making terminations; respondent United Teachers of Santa Clara also argues that administrators as well as teachers are subject to layoff pursuant to section 13447.

 In part, section 13447 prohibits the termination of permanent employees "while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render." In *Moreland Teachers Assn.* v. *Kurze, supra*, 109 Cal.App.3d 648, decided after the trial court's decision in this case, the court construed the above language (now in § 44955) to mean that whenever reduction in staff is necessitated by lower ADA or by reduction or discontinuation of a service, where competency is not demonstrated by a senior employee, a junior employee having the ability to serve the needs of a program may be retained by the district even though it may result in the termination of the senior employee. The *Moreland* court then applied that conclusion to reject the argument that administrators should be laid off in accordance with strict seniority as certificated teachers (at p. 655): "Administrators hold their position at the pleasure of the governing board. (*Anaclerio* v. *Skinner* (1976) 64 Cal.App.3d 194, 197 [134 Cal.Rptr. 303].) For that reason alone, it would seem anomalous to compel a school district to forego that prerogative in times of staff reduction. We need not pursue that subject, however, as our interpretation of section 44955 provides adequate answer. The trial court found, and we agree, that administrators may be retained just as any other

employee holding a special credential or needed skill, if such credentials or competence are not shared. by a more senior employee, though it results in termination of a senior employee."

■ Here, the Board adopted the finding of the hearing officer that "no certificated employees with less seniority are being retained for service which respondents are certificated and competent to render." We conclude that implicit in that finding is the finding that Gatti, although junior in seniority to certain of respondents, had administrative skills or competence which they lacked. Thus his retention was justified, despite the termination of senior employees.

We share the trial court's concern with the seeming inequity to the teaching staff of counting the superintendent as part of its current certificated staff when, because of his administrative competence, he was retained despite the termination of more senior employees. However, that is a problem more properly addressed to the Legislature than to this court. In authorizing the reduction of a district's certificated staff, section 13447 makes no distinction between administrators and teachers, and nothing in the statutory language suggests that the Legislature intended that those who have administrative positions as well as a teaching certificate are not to be counted as part of that staff. The opposite is true. All currently employed certificated personnel, including those who hold dual qualifications, are to be counted as part of the current certificated staff. The general rule is that any reduction in staff is to be made according to seniority. However, the exception to that rule permits retention of an employee holding a special credential or needed skill, even though that retention results in termination of the senior employee. Among employees who may be retained for their special competence are administrators.

Consequently, we conclude that the trial court erred when it found that respondents could not be terminated as long as Gatti was employed and counted as a certificated employee.

III. REDUCTION IN HEALTH CARE SERVICES EMPLOYEES

■ Section 13447 permits a decrease in staff because a particular kind of service is to be reduced or discontinued. The Board adopted the ALO's finding that health services were to be reduced or discontinued,

necessitating termination of 5.4 employees. However, the trial court found that the district was not reducing sufficient health services to justify the termination of any of the respondents. In the first appeal, the court found substantial evidence to support the trial court's findings that certain of the health service positions were improperly reduced, but remanded for a determination of whether the respondents' jobs were among those invalidly discontinued. On remand, the trial court again found that appellants were not reducing sufficient health services to terminate any of the respondents. Implicit in that finding is the trial court's determination that respondents' jobs were invalidly discontinued.

Appellants' position is that there is no evidence to support the trial court's findings. Appellants argue that the record is clear that first aid assistance, health instruction, and the handling of child abuse was to be provided by employees other than nurses, and that therefore the nurses can be terminated. Relying on *Campbell, supra*, 76 Cal.App.3d at page 812, appellants argue that a *particular kind* of service may be eliminated even though a service continues to be performed or provided in a different manner by the district. However, *Campbell* also holds that a district may not dismiss an employee pursuant to section 13447 and yet continue the identical kind of service and position held by the terminated employee. It is this portion of the *Campbell* holding that respondents contend supports the trial court's finding. Appellants point to nothing in the record to establish that there would be a difference in the method or manner of providing these health services, or in the services themselves. Appellants concede that the difference is only that a person other than the nurses will provide these services. It appears, therefore, that the trial court's findings are supported by substantial evidence.

IV. PROPRIETY OF THE LOTTERY

The court further found that the Board did not conduct a proper lottery to determine the order of seniority of certain employees. At the time of this action, the seniority or order of employment of teachers who rendered their first paid service on the same date was determined by lottery, to be conducted within 30 days of the date service was first rendered. (§§ 13262, 13264.) ▮ (The lottery system has been eliminated; as among employees who first rendered service on the same date, the Board now must determine the order of termination solely on the basis of needs of the district and the students (present §§ 44844, 44846,

44950).) Among certificated employees who first gave service on September 24, 1973, were respondent Maureen Standifer and another individual. Inadvertently, neither was included in the lottery held that fall. In March 1974, the oversight was apparently discovered. The personnel director then had Standifer draw a number; she drew 44, to which the director added an A and inserted her name in the order of employment between numbers 44 and 45.

The administrative law officer found the 1973 drawing to be improper because of the omission, and recommended a new drawing. The Board, however, made a finding that the order of employment was correct, in effect approving the insertion of Standifer and the other individual's names as supervised by the personnel director. The trial court then found and concluded that respondents did not conduct a lottery pursuant to sections 13263 and 13264 because they failed to include Standifer. We conclude, as appellants contend, that the Board had power to make corrections in the order of employment, and that the appointment list as corrected was proper.

Section 13264 provided, in part: "The order once determined by lot shall be permanent." However, the section also provides: "The board shall have power and it shall be its duty to correct any errors discovered from time to time in its record showing the order of employment." Once the error was discovered, the Board was required by section 13264 to correct that error. In carrying out that statutory mandate, the Board could only proceed by exercising its judgment and discretion, as the statute does not specify procedures to follow in making corrections. A school board's exercise of discretion is not subject to judicial review unless the board fails to follow proper procedures or the action was fraudulent, arbitrary, or capricious. ■ "In determining whether the decision of a school board is reasonable as distinguished from fraudulent, arbitrary or capricious, its action is measured by the standard set by reason and reasonable people, bearing in mind that such a standard may permit a difference of opinion on the same subject." (*Arthur* v. *Oceanside-Carlsbad Junior College Dist.* (1963) 216 Cal.App.2d 656, 663 [31 Cal.Rptr. 177].) While the Board could have conducted an entirely new lottery, that approach would have resulted in all of the employees involved receiving a new seniority number more than 30 days after their service was first rendered. The Board's method of correcting the error seems reasonable, and should not have been disturbed by the court.

V. Fair Hearing

A. *Brown Act Violation*

The trial court found that the Board considered whether to accept or reject the hearing officer's decision on May 12, 13 and 14 in executive session in spite of the respondents' request for an open hearing. The court concluded that the Board therefore violated Government Code section 54950 et seq. during deliberations and that respondents did not receive a fair hearing in the manner required by law.

Section 54953 of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.) and Education Code section 966 require that all meetings of the governing board of a school district be open to the public. ■ There are exceptions to the public meeting requirement of the Brown Act. Permission is given under the act to hold nonpublic executive meetings to consider appointments, employments or dismissals of public employees, unless the employee requests a public hearing. These exceptions are not applicable, however, to meetings when the Board is considering the acceptance or rejection of the administrative law officer's decisions relating to notices of probable dismissal of certificated employees in accordance with sections 44949 and 44955. Hence the executive session in the instant case was in violation of the Brown Act. However, the validity of the action taken by the Board is not affected by the violation of the Brown Act. (*Griswold v. Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648, 658 [134 Cal.Rptr. 3].) Moreover, the fact that the Board's decision was made during a meeting which violated the Brown Act did not in and of itself deny respondents a fair hearing.

B. *Reading the Transcript*

■ Respondents further contend that appellants did not read the transcript of the hearing before the ALO, in violation of Government Code section 11517, and also failed to specify their reasons for modifying the ALO's decision. Certificated employees notified of pending termination are entitled to a hearing conducted in accordance with Government Code section 11500 et seq. (Ed. Code, §§ 13447, 13443.) Government Code section 11517, subdivision (c), provides that if the proposed decision of the hearing officer is not adopted by the agency, the agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence. Respondents argue that in violation of that section, appellants did not read the

transcript. There is evidence that prior to the commencement of the executive session on May 12, two of the members of the appellant Board stated they had not read the transcript of the administrative hearing. However, the Board's consideration of the administrative law officer's decision spanned three days during which time all members of the Board had ample opportunity to familiarize themselves with the transcript. It is presumed that official duty has been regularly performed. (*Chosick* v. *Reilly* (1954) 125 Cal.App.2d 334, 337 [270 P.2d 547].) That presumption is not rebutted by this record.

 There is no requirement in section 11517 that the Board state its reasons for modifying the ALO's decision.

VI. POSITIONS AVAILABLE DUE TO ATTRITION

In determining the size of its current staff, the Board included those teachers on leave for the current year and subtracted interns and temporary employees; however, the Board did not consider the effect of staff attrition. A school board cannot disregard normal staff attrition in computing the number of teachers who can be terminated pursuant to section 13447. (*Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571, 578 [116 Cal.Rptr. 183].) The Board must allow for "positively assured attrition" such as voluntary resignations and retirements which occur during the "computation period." (*Lewin* v. *Board of Trustees* (1976) 62 Cal.App.3d 977, 982 [133 Cal.Rptr. 385].) *Lewin* was decided before the retrial in this case.

The trial court found: "In determining the number of positions available due to attrition [appellants] failed to consider all of the certificated employees, who were classified as interns or temporary employees who by virtue of their classification would no longer be employed by the District, or who had requested and obtained leaves of absence, or who had submitted and had accepted their resignation or had retired." On remand, it will be necessary for the trial court to reexamine various groups of employees and their availability to determine whether they should be included in determining the size of the current staff.

A. *Resignations*

At the time of retrial, appellants conceded that 10 retirements and 2 voluntary resignations had been approved which reduce by 12

the number of employees who can be dismissed because of the decline in enrollment.

### B. *Leaves*

■■■ In *Campbell Elementary Teachers Assn., supra,* 76 Cal.App. 3d 796, 810, the court held that a district is *not* required to consider certificated employees who have requested leaves of absence for the next school year in determining positively assured attrition occurring during the computation period.

### C. *Temporary Employees and Interns*

■■■ Temporary employees are teachers hired to fill the short range needs of a school district; they may be hired for a semester or a year because a certificated employee has been granted leave, or is experiencing long-term illness. ■■■ Such teachers may be summarily dismissed; the notice and hearing requirements applicable to permanent and probationary teachers are inapplicable to temporary teachers. (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629]; § 13337.3.)

If temporary employees are by definition serving in place of an employee on leave, it follows that when the temporary employee leaves, it is because the employee on leave is returning. ■■■ Consequently, the departure of a temporary employee does not result in the reduction of the staff, and the district is not required to count departing temporary employees when they consider attrition.

### D. *Permissible Reduction Because of ADA Decline*

■■■ When the hearing officer computed the current staff, he included 18 staff members as currently on leave, and determined the total 1975 staff to be 993.03, permitting a reduction of only seven because of declining ADA. The Board rejected that computation because it determined that 39 staff members were currently on leave. Thus the Board determined the total staff to be 1014.03, permitting a reduction of 28 employees. The trial court made no finding with respect to the number currently on leave. Respondents urge that the ALO's determination was the correct one and suggest a formula based upon which he made his determination. ■■■ However, where the termination of probationary teachers is involved, the trial court's review of the

factual determinations of the agency is limited to the substantial evidence test, since a probationary teacher has no vested right to be rehired. (*Campbell Elementary Teachers Assn., supra*, 76 Cal.App.3d 796, 802, citing *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 824 [129 Cal.Rptr. 443, 548 P.2d 1115].) ▮▮▮ The court's review on appeal from the decision of the trial court is identical to that of the trial court; that is, is there substantial evidence to support the Board's decision? (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149 [93 Cal.Rptr. 234, 481 P.2d 242].) There is testimony in the record that the number of certificated employees on leave for the 1974-1975 school year was 39.

There is substantial evidence in the record to support the Board's findings as to the number of teachers on leave for the current year, 1974-1975. The Board was not required to include employees who would be on leave in 1975-1976, temporary employees, or interns in computing attrition; however, the Board was required to consider all "positively assured attrition" such as voluntary resignations and retirements.

## VII. ADA OF SPECIAL PROGRAMS NOT COUNTED

Children's centers are part of a special program designed to provide an integrated plan for the care and development of children in the absence of their parents, and a comprehensive system of child development services for prekindergarten and school age children and their parents. (*California Teachers Assn.* v. *Pasadena Unified Sch. Dist.* (1978) 79 Cal.App.3d 556, 561 [145 Cal.Rptr. 100]; former Ed. Code, § 16701 et seq.) ▮▮▮ Enrollment in the child center is not included in the computation of the district's average daily attendance, although some of the center's staff are certificated. Respondents persuasively argue that it is inequitable to include the center's employees as among the total staff, but not to include the center's increasing enrollment in computing whether overall ADA has declined.

▮▮▮ Certificated employees who work at the children's center may be laid off for lack of work and lack of funds without the notice and hearing required by section 13447. (§ 16766; *California Teachers Assn.* v. *Pasadena Unified Sch. Dist., supra*, 79 Cal.App.3d at p. 563.) ▮▮▮ Certificated employees laid off pursuant to section 13447 cannot "bump" a children's center employee, because the statutory grounds permitting termination of the two are different. (*Rutherford* v. *Board*

*of Trustees* (1976) 64 Cal.App.3d 167, 180 [134 Cal.Rptr. 290].) ▮ Since children's center employees can be terminated without the procedural formalities required for other certificated employees, they should not be counted among the certificated staff in determining the permissible ratio between staff and ADA pursuant to section 13447.

On remand, the number of children's center certificated staff in each of the two years being compared should be deducted from the total certificated staff in each of those years, respectively.

Respondents raise other objections to the Board's findings. However, no findings were made thereon by the trial court, and since respondents proposed the findings adopted by the trial court, they cannot be heard to complain. (6 Witkin, Cal. Procedure, Appeal, §§ 266-267, pp. 4257-4258.)

The judgment is reversed, and the cause is remanded with directions that the trial court take such additional evidence and make such findings as are herein required, and enter judgment in accordance with the views herein expressed.

Feinberg, J., and Barry-Deal, J., concurred.