[No. A093853. First Dist., Div. Three. May 28, 2002.]

MARY JO ZALAC, Plaintiff and Appellant, v.
GOVERNING BOARD OF THE FERNDALE UNIFIED SCHOOL
DISTRICT, Defendant and Respondent.

## COUNSEL

Roberts, Hill, Bragg, Angell & Perlman, Andrew J. Stunich and Anne M. Rudolph for Plaintiff and Appellant.

Mitchell, Brisso, Delaney & Vriez and William F. Mitchell for Defendant and Respondent

Kronick, Moskovitz, Tiedemann & Girard, Robert A. Rundstrom and Roman J. Munoz for Education Legal Alliance of the California School Boards Association as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**POLLAK, J.**—Mary Jo Zalac appeals from the denial of her petition for a writ of mandate seeking to compel the Governing Board of the Ferndale Unified School District (Board) to set aside her termination as a kindergarten teacher. Zalac contends that she was improperly classified as a temporary employee because the Class Size Reduction Program under which she was hired is not a "categorically funded project[] . . . not required by federal or state statute" as that expression is used in Education Code section 44909,[1] and that the Board failed to comply with the procedures for laying off a permanent employee required by sections 44955 and 44949. The Board adopted the proposed decision of the administrative law judge who heard her administrative appeal, concluding that it was unnecessary to determine whether Zalac had been improperly classified as a temporary employee since the school district had voluntarily complied with the layoff procedures prescribed by sections 44955 and 44949. The trial court denied Zalac's petition for a writ of mandate on the ground that Zalac had been properly classified as a temporary employee because the Class Size Reduction Program is a categorically funded project, rendering it unnecessary to decide whether the layoff procedures had been satisfied. We conclude that for the first two years of her employment Zalac was properly classified as a temporary employee, because the Class Size Reduction Program is a categorically funded project not mandated by statute, but that she was incorrectly retained in a temporary status after the funding for the program at her school was discontinued. Nonetheless, Zalac was terminated in compliance with the procedures for laying off permanent employees for economic reasons, so that the trial court's denial of her petition will be affirmed.

### STATEMENT OF FACTS

Zalac is a credentialed teacher first employed by the Ferndale Unified School District (District) as a kindergarten teacher for the 1997-1998 school year. The certificated employment contract that she signed specified that she was a temporary employee in a Categorically Funded Program under section

---

[1] Unless otherwise indicated, all further statutory references are to the Education Code.

44909.[2] Zalac entered identical contracts with the District for the following two school years, 1998-1999 and 1999-2000. Throughout this period, Zalac taught one of the school's two kindergarten classes and the District's internal records identified her as a temporary employee. On March 2, 2000, the District served two notices on Zalac. The first—pursuant to section 44954—notified her of nonreemployment as a temporary employee. The second—pursuant to sections 44949 and 44955—notified her that her services would not be required for the following school year because the District had determined that it was necessary to reduce the number of certificated employees because of the discontinuance or reduction of certain particular kinds of services, including the elimination of one full-time equivalent kindergarten class size reduction position.

Following her receipt of the March 2 layoff notices, Zalac requested a hearing, to which a permanent employee was entitled under section 44949, subdivision (b), to determine if there was proper cause for not reemploying her. An "accusation" was thereupon filed (under Gov. Code, § 11503) alleging that the cause for not reemploying Zalac related solely to the welfare of the school and the pupils thereof within the meaning of sections 44949 and 44955, and incorporating the Board's determination that it was necessary to reduce or eliminate certain particular kinds of services and that as a result it was necessary to decrease the number of certificated employees of the District. The accusation further alleged that no permanent or probationary certificated employee having less seniority than Zalac would be retained to render a service that Zalac was certificated, competent and legally entitled to render.[3]

Zalac filed the necessary notice of defense and there followed an evidentiary hearing before an administrative law judge, who issued a proposed decision, which, on May 11, 2000, was adopted by the Board. This decision found that "[f]rom her first date of employment, [Zalac] has been employed

---

[2]Zalac has objected to the inclusion in the record of the written employment contracts for the first and the subsequent two years because they were not included in the record of the administrative hearing, but were added to the record in the trial court on the trial judge's own motion. The augmentation of the record to include these contracts was not an abuse of discretion and resulted in no prejudice to Zalac because the terms of these contracts were not disputed in the administrative proceedings, there was testimony before the administrative law judge describing the relevant terms of her contracts, and the administrative law judge found Zalac to have been employed as a temporary employee. While Zalac claims that by augmenting the record towards the end of the trial court proceedings the court deprived her of the opportunity to show that her consent to the agreements had been coerced, she made no proffer of evidence to support this rather unlikely suggestion which, if true, would have been equally relevant whether or not the written contracts were received in evidence.

[3]The allegation contained the qualification "except as authorized by statute," but there was no suggestion that this qualification had any application to Zalac's situation.

as a temporary employee in the class size reduction program (see Ed. Code, § 52120 et seq.), a categorically funded program" and that "[t]he District has employed [Zalac] in this classification for three full years." However, in the legal conclusions section of the decision, the "complicated classification issue" of whether Zalac was entitled to be reclassified to permanent employee status was held unnecessary to decide because, as the decision concluded, the District had "treated [Zalac] as if she were a permanent employee with seniority rights and provided her with all rights accorded such teachers under Education Code sections 44955 and 44949." On that basis the failure to reemploy Zalac was upheld and Zalac was so notified.

Zalac thereupon petitioned for a writ of mandate from the superior court. In denying the petition, the court found it unnecessary to evaluate Zalac's claim that the procedures specified in sections 44955 and 44949 for the termination of a permanent employee had not been complied with, but held instead that Zalac was properly classified as a temporary employee and therefore was not entitled to insist on compliance with those procedures. In its written ruling, the trial court found "that the Class Size Reduction Program . . . is a categorically funded program. There is an annual application procedure, the program is not required by statute, and need not be implemented by the District. [¶] Because petitioner was hired in a categorically funded program, she could be hired as a temporary employee. In fact she was a temporary employee and the District could refuse to rehire her, and it properly did so."

Thus, in order to prevail on her appeal, Zalac must establish both that she was entitled to the rights of a permanent employee, and that she did not receive them.

DISCUSSION

I. *Was Zalac Properly Classified as a Temporary Employee?*

*Categorically Funded Projects*

■ This case illustrates the sad truth of Justice Howard B. Wiener's observation that "[e]ntry into the Education Code is painful." (*Haase v. San Diego Community College Dist.* (1980) 113 Cal.App.3d 913, 917 [170 Cal.Rptr. 366].) The initial challenge in this case is to determine the relationship between "categorically funded projects which are not required by federal or state statute" within the meaning of section 44909, and the Class Size Reduction Program established in 1996 (§ 52120 et seq., Stats. 1996, ch. 163, § 3).

■ As explained by the opinion in *Haase*, "[t]eachers, certificated employees, are given rights through a rather complex system designed to give a

degree of academic tenure in direct relation to years of employment. Additional service by a teacher imposes a limitation on the power of the institution's governing body to terminate employment. The Legislature prevents the arbitrary dismissal of certificated employees who have obtained positions of a settled and continuing nature . . . by requiring notice and hearing before termination . . . . To fill its short range needs, however, a district may employ a certificated person as a temporary employee . . . who may as a general rule be dismissed at the pleasure of the district . . . . [¶] The Legislature, however, has restricted the flexibility of a school district in the continued use of temporary employees . . . , for otherwise the benefits resulting from employment security for teachers could be subordinated to the administrative needs of a district. . . . Temporary classification, narrowly defined by the Legislature, must be strictly construed." (*Haase v. San Diego Community College Dist., supra,* 113 Cal.App.3d at pp. 917-918, citations omitted.) These general principles echo the perspective articulated by Justice Stanley Mosk for the California Supreme Court in *Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826-827 [114 Cal.Rptr. 589, 523 P.2d 629] ["Because the . . . temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be strictly interpreted."].)

◼ Although section 44909 does not use the term "temporary"—an employment classification defined in section 44919, and used elsewhere in the Education Code (e.g., §§ 44917, 44918)—it does define a circumstance of employment under which a certificated employee's service does not count towards the attainment of permanent status. As noted above, Zalac was referred to as a temporary employee in her employment contract, and by the findings of the administrative law judge and the trial court. Under section 44909, the governing board of a school district "may employ persons possessing an appropriate credential as certificated employees in . . . categorically funded projects which are not required by federal or state statutes."[4] The section provides that the terms and conditions under which such persons are employed shall be as mutually agreed in writing, and that

[4]Section 44909 reads in full as follows: "The governing board of any school district may employ persons possessing an appropriate credential as certificated employees in programs and projects to perform services conducted under contract with public or private agencies, or categorically funded projects which are not required by federal or state statutes. The terms and conditions under which such persons are employed shall be mutually agreed upon by the employee and the governing board and such agreement shall be reduced to writing. Service pursuant to this section shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee unless (1) such person has served pursuant to this section for at least 75 percent of the number of days the regular schools of the district by which he is employed are maintained and (2) such person is subsequently employed as a probationary employee in a position requiring certification qualifications. Such persons may be employed for periods which are less than a full

"[s]ervice pursuant to this section shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee" unless two conditions are met. The first condition is that the person have served for at least 75 percent of the regular school days of the district, and the second is that the "person is subsequently employed as a probationary employee in a position requiring certification qualifications." (*Ibid.*) The statute continues by providing that "[s]uch persons . . . may be terminated at the expiration of the contract or specially funded project without regard to other requirements of this code respecting the termination of probationary or permanent employees other than Section 44918." (§ 44909.)

In applying this section, one would hope to find a definition of the term "categorically funded project," but one hopes in vain. Although the term has been present in the Education Code since 1973 (Stats. 1973, ch. 399, § 2, p. 864), and is now found in other sections applying to county educational agencies and community college districts (see §§ 1294.5, 87470), nowhere in the code is the term defined.

Current section 44909 traces back to what was section 13329 prior to the reorganization of the Education Code that became effective in 1977. Prior to a 1973 amendment, former section 13329 provided simply that "Service by a person as an instructor in classes conducted under contract with public or private agencies" shall not be included in computing service towards classification as a permanent employee. (Stats. 1970, ch. 697, § 1, p. 1328.) In 1973, former section 13329 was expanded to apply to services performed for "other categorically funded projects of indeterminate duration."[5] This phrase was defined in a 1979 opinion of the Attorney General. (62 Ops.Cal.Atty.-Gen. 120 (1979).) "The term 'category,'" the opinion reasoned, "refers to a class, group, or classification of any kind, and may connote a division of the dependent population whose needs are attended to by specific government

school year and may be terminated at the expiration of the contract or specially funded project without regard to other requirements of this code respecting the termination of probationary or permanent employees other than Section 44918. [¶] Whenever any certificated employee in the regular educational program is assigned to a categorically funded project not required by federal or state statute and the district employs an additional credentialed person to replace that certificated employee, the replacement certificated employee shall be subject to the provisions of Section 44918. [¶] This section shall not be construed to apply to any regularly credentialed employee who has been employed in the regular educational programs of the school district as a probationary employee before being subsequently assigned to any one of these programs."

[5]The legislative history reflects nothing as to the intended scope of this addition. However, the Senate Bill that made the change first used the term "other specially funded projects of indeterminate duration." (Sen. Bill No. 756 (1973-1974 Reg. Sess.) as introduced Apr. 12, 1973.)

measures . . . . 'Categorically funded' refers to the authorization and allocation of funds according to specific categories. 'Indeterminate' duration refers to a period of time which is not clearly established or known in advance." (*Id.* at p. 123.) Thus, the opinion defined a categorically funded project of indeterminate duration as "a project the continuance of which beyond a certain date is not established or known in advance, i.e., which is subject to some future contingency such as the enactment of further enabling legislation, and which is specially funded according to the specific class of classes therein designated." (*Ibid.*)[6]

The intent of former section 13329 was "to prevent a person from acquiring probationary status solely through teaching in a categorically funded program. This permits the hiring of qualified persons for categorically funded programs of undetermined duration without incurring responsibility to grant tenured status based on such teaching services alone." (*Winslow v. San Diego Community College Dist.* (1979) 97 Cal.App.3d 30, 38 [158 Cal.Rptr. 509].) The section "was intended to give school districts flexibility in the operation of special educational programs to supplement their regular program and to relieve them from having a surplus of probationary or permanent teachers when project funds are terminated or cut back." (*Kamin v. Governing Board* (1977) 72 Cal.App.3d 1014, 1018 [139 Cal.Rptr. 853] (*Kamin*).)

However, the authorization to hire teachers for special programs without having them acquire the rights of probationary or permanent employees does not extend to "instructors in classrooms that are part of the regular educational program of a school." (*Kamin, supra,* 72 Cal.App.3d at pp. 1018-1019.) In *Kamin,* the teacher in question was hired to replace another permanent teacher who became a resource teacher under a temporarily funded special compensatory education project. Although the three successive annual contracts with the replacement teacher classified her as "a specially funded project employee," when the project funding was reduced and the teacher was not reemployed, she was nonetheless held to have obtained the rights of a permanent employee by having taught full time for the necessary period of time[7] in the school's regular classes. The court thought it "clear that section 13329 does not apply to a teacher who is

---

[6]In that opinion, the Attorney General concluded that the state's Master Plan for Special Education (former § 56300, Stats. 1976, ch. 1010, § 2, p. 3752, as amended by Stats. 1977, ch. 1247, § 9, pp. 4235-4236, and repealed by Stats. 1980, ch. 797, § 8, p. 2411) was, prior to the time it was converted to an ongoing regular program, a categorically funded project of indeterminate duration because prior to that time the continuation of the program was contingent upon the enactment of further enabling legislation.

[7]At the time, former section 13304 provided that a certificated full-time teacher in a school with average daily attendance of at least 250 students attained permanent status upon

employed as a full-time classroom teacher to conduct a class that is part of the regular educational program of a school." (*Kamin, supra,* at p. 1020.)[8] Moreover, the court rejected the contention that the classes in which the replacement taught were specially funded project classes because they shared in the benefits of the program. These benefits were shared by every class in the school, proving "only that the regularly conducted kindergarten class in which [the replacement] taught (and her classrooms in her second and third year) were affected by and participated in the project to the same extent as every other classroom at Peres. No metamorphosis from regular class to project class was effected." (*Kamin, supra,* at pp. 1019-1020.) To the same effect is the subsequent decision in *American Federation of Teachers v. Board of Education* (1977) 77 Cal.App.3d 100, 105-106 [143 Cal.Rptr. 264].

In 1982, a bill passed in the Assembly would have deleted categorically funded projects of indeterminate duration from the scope of section 44909. (Assem. Bill No. 492 (1981-1982 Reg. Sess.).) However, this bill was amended in the Senate to retain a district's right to hire certificated employees whose service will not ripen into permanent status for "categorically funded projects which are not required by federal or state statutes" (Stats. 1982, ch. 1003, § 1, p. 3687), and teachers hired for all programs within the scope of the statute were given the reemployment rights of substitute or temporary employees deemed to be probationary employees under section 44918. The legislative history of this revision provides no explanation of the thinking behind the change in the scope of the statute from "categorically funded projects of indeterminate duration" to "categorically funded projects which are not required by federal or state statutes." (The indeterminate duration qualification was retained in §§ 1294.5 and 87470.) However, under section 44909 the uncertainty of future funding is no longer explicitly controlling—perhaps because there is an element of such uncertainty for all programs, even those authorized indefinitely.

While the history of section 44909 thus provides only limited guidance to the parameters of a categorically funded project, the term has a recognized meaning in the area of school finance, which other provisions in the Education Code indicate the Legislature has adopted. Put simply, "[c]ategorical

commencement of a fourth successive school year. Since the teacher had not been given the necessary notice of dismissal and advice of hearing rights during the third year, she was deemed to have been reemployed for the fourth year. Under current section 44929.21, subdivision (b), certificated full-time teachers in schools of that size attain permanent status upon the commencement of their third successive school year.

[8]When the statute was amended in 1982, another paragraph was added rendering the section applicable to a certificated teacher hired to replace another certificated teacher in the regular educational program who is assigned to a categorically funded project not required by federal or state statute. (Stats. 1982, ch. 1003, § 1, p. 3687.) This additional provision has no application to the present case, however, since Zalac was not hired to replace another teacher.

education programs are programs funded to address specified needs." (Legis. Analyst, Rep. to Joint Legis. Budget Com., analysis of 2002-2003 Budget Bill, Sen. Bill No. 1261 (2001-2002 Reg. Sess.) p. E-77.) There is a distinction "between revenues provided for general operating purposes and revenues reserved for particular, specifically designated uses, such as the construction of school buildings, the transportation of pupils, or the provision of a special curricula for vocational or compensatory education. Such earmarked revenue sources, generally known as categorical aids, are a component of every state school finance system and are at present the nearly universal format for all programs of federal aid to elementary and secondary education." (Pincus, School Finance in Transition: The Courts and Educational Reform (1974) pp. 223-224.) As explained more fully in a 1993 study by the Legislative Analyst's Office recommending certain reforms in categorical education programs, "[t]he state funds K-12 programs in two ways. First, school districts and county offices receive an agency-specific 'revenue limit,' which provides base funding for each student who attends school within the district or county. The purpose of the revenue limit is to provide the funding needed to meet the basic educational needs of a 'typical' K-12 student. . . . Revenue limits are supported by both state apportionments and local property tax revenues. [¶] Second, [local educational agencies] also receive funds for categorical programs. These programs typically address needs that cannot be, or are not being, addressed with base revenue limit funds." (Legis. Analyst, Reform of Categorical Education Programs: Principles and Recommendations (Apr. 1993) p. 9.) Defining categorical programs as those that are funded outside the base revenue limit "includes as 'categorical' some programs that are funded as part of the revenue limit appropriation but in fact are 'add-ons' that operate as separate programs." (*Id.* at pp. 9-10.) The 2001-2002 Budget Act "allocated approximately 31 percent of K-12 Proposition 98 funds, or about $12 billion, for over 70 categorical programs. (The remaining 69 percent of funding is available for local education agencies to spend for general educational purposes. Most of this funding is provided in the form of 'revenue limits' apportionments.)" (Legis. Analyst, Rep., *supra,* p. E-77; cf. Pincus, *supra*, pp. 236-237.)

Thus, in 1979, part 34 was added to the Education Code, establishing dates and procedures for the evaluation and sunsetting of specified "categorical program[s]." (§ 62000 et seq., Stats. 1979, ch. 282, § 38.5, p. 1000, as amended by Stats. 1983, ch. 1270, § 8.5, p. 5041; see § 62001, subd. (b).) Part 35, concerning the use of funds for designated "categorical programs," was added in 1983 and amended in 2000. (§ 63000 et seq., Stats. 1983, ch. 498, § 125, p. 2141, as amended by Stats. 2000, ch. 369, § 2.) In 2000, chapter 2 also was added to part 35, creating a "Pilot Project for Categorical Education Program Flexibility," under which school districts participating in

the pilot project were given certain flexibility in the use of funds received for designated "categorical education programs." (§ 63050 et seq., Stats. 2000, ch. 369, § 3.) And most recently, in 2001, part 36 was amended, creating a consolidated application process for funds requested under a variety of designated "categorical programs." (§ 64000 et seq., added by Stats. 1983, ch. 1270, § 15, p. 5045, amended by Stats. 2001, ch. 724, § 2.)[9] Despite the slight difference in word choice, what are referred to in these sections as "categorical programs" or "categorical education programs" are examples of what are referred to as "categorically funded projects" in section 44909.

As a review of the many and diverse programs categorically funded readily reveals, a categorically funded project need not involve the creation of special classes divorced from the normal curriculum, but may augment the curriculum in whatever manner is specified in the particular program. (See, e.g., §§ 63000, 63050, 64000; Legis. Analyst, Reform of Categorical Education Programs: Principles and Recommendations, *supra,* pp. 10-11.)[10] The defining characteristics are that the program be financed outside the base revenue limit with funds designated for a use specified by the particular program.

*Class Size Reduction Program*

For the 1997-1998 school year, the District applied to and received from the State Superintendent of Public Instruction an apportionment of funds under the then newly created Class Size Reduction Program. (See § 52120 et seq.) Under section 52124, subdivision (b), "[a] school district may establish a program to reduce class size in kindergarten and grades 1 to 3, inclusive, and that program shall be implemented at each schoolsite" as provided in the statute. The purpose of this program "is to ensure that children in public school in kindergarten and grades 1 to 3, inclusive, receive instruction in classrooms where there are not more than 20 pupils." (§ 52122, subd. (b)(A)(ii).) School districts wishing to participate in the program do so by

_____

[9]Additionally, in 1990, part 37 was added, and in 1994 amended, to declare the intent of the Legislature "that all funding for categorical programs that are funded according to formulas based on indicators of pupils' needs shall be based on district counts of pupils meeting the criteria for the programs" and that data collected be used to "revise and update the funding formulas for categorical programs" to ensure that funding is distributed to school districts based on updated indicators of pupils' needs. (§ 64100, Stats. 1990, ch. 703, § 1, p. 3280, as amended by Stats. 1994, ch. 922, § 171, p. 5258.)

[10]This report divides categorical programs into four general categories: programs for students with special needs, programs to improve instruction and curriculum, programs addressing student social and health needs, and administration and other programs. (Legis. Analyst, Reform of Categorical Education Programs: Principles and Recommendations, *supra,* p. 10; see also Ladd & Hansen, Making Money Matter: Financing America's Schools (1999) pp. 81-82, 259-260.)

submitting annually an application for funding and complying with several requirements, including retention of teachers with special training and maintaining the size of classes in the program at 20 students or less. (§§ 52122, subd. (e)(2), 52123, subd. (c), 52127.)

Unfortunately the record is deficient in reflecting precisely when, for what classes, and for what periods of time, the District received funding under this program. It appears that the District obtained funds under this program to reduce class size in kindergarten and grades 1 to 3 for two years, but failed to keep class sizes within the limits prescribed by the program and lost class size reduction funds for the 1999-2000 school year. Nonetheless, Zalac was retained for that school year under the same contractual arrangement that existed in the two prior years.

As recited above, the contract between Zalac and the District expressly indicated, by the check of a box, that Zalac was classified as a temporary employee under section 44909.[11] While the District argues that by having agreed to this provision Zalac is estopped from challenging the propriety of her classification, it is clear that she is not. ■ Certificated employees must be classified in accordance with the provisions of the Education Code. Any agreement to waive the benefits of these provisions is void. (§ 44924; *United Teachers—L.A. v. Los Angeles Unified School Dist.* (1994) 24 Cal.App.4th 1510, 1517-1518 [29 Cal.Rptr.2d 897]; cf. *Balen v. Peralta Junior College Dist., supra,* 11 Cal.3d at pp. 830-831.) *American Federation of Teachers v. Board of Education, supra,* 77 Cal.App.3d at pages 108-109 (*American Federation of Teachers*), relied on by the District, is not to the contrary. In that case the court found the teacher's delay in questioning her temporary classification amounted to laches, and that the school district had relied on her silence to its detriment by failing to give her notice of nonreemployment, estopping her from asserting a claim to probationary status. ■ Here, however, not only did Zalac previously raise the issue

---

[11]Paragraph 3 of the certificated employment contracts with Zalac for each of the three years she was employed by the District was in the following form:

"CLASSIFICATION: Employee is classified as follows:

| | | | |
|---|---|---|---|
| ( ) Permanent | (E.C. 44929.21 - 250 ADA or more) (E.C. 44929.23 - less than 250 ADA) | ( ) Temporary - Long | E.C. 44920, 87481 and/or 87482) based on the need for additional certificated employees because of |
| ( ) Probationary | (E.C. 44915, 44929.23, 87476) | | leave or illness of another employee) |
| ( ) Substitute | (E.C. 44917, 87478) | (X) Temporary - | E.C. 44909, 87470) |
| ( ) Temporary - Community College (Less than 60%) | (E.C. 87482.5) | | Categorically Funded Program (the specific project is _____ |
| ( ) Temporary Short | (E.C. 44919, 87478 and/or 87480) (Less than 20 days) | | and the length of employment is of indeterminate duration depending upon the categorically funded program)" |

with the District, but there was no reliance by the District since it did give Zalac the necessary notice in time to effect her layoff for the following year. Hence, Zalac is not estopped from challenging her classification.

Zalac contends that the Class Size Reduction Program cannot be considered to come within the current version of section 44909 because kindergarten classes are mandated by the California Constitution, article IX, section 6 ("The Public School System shall include all kindergarten schools, elementary schools . . ."). The amicus curiae argues that this provision means simply that the public school system shall include schools with kindergarten classes, and does not require any particular school site to include kindergarten classes. While that may be so, the question is not whether kindergarten classes are required, but whether classes of 20 or fewer pupils are required, and plainly they are not. Participation in the Class Size Reduction Program is explicitly optional, and thus not required by any statute. Unlike some categorical programs, it is not state mandated. (Cf. Legis. Analyst, Reform of Categorical Education Programs: Principles and Recommendations, *supra,* p. 12; Legis. Analyst, Rep. to Joint Legis. Budget Com., analysis of 2002-20003 Budget Bill, *supra,* pp. E-77 to E-78.)

Simply because the Class Size Reduction Program is not statutorily mandated does not necessarily mean that it is a categorically funded project in the first place, but there can be no doubt that it is. Funds for this program are obtained by a special application not part of the base revenue limit and are designated for a particular use defined by the program (§ 52122). The Legislative Analyst's Office 1993 report explicitly included Class Size Reduction Programs among the list of categorical programs. (Legis. Analyst, Reform of Categorical Education Programs: Principles and Recommendations, *supra,* p. 11; see also Legis. Analyst, Rep. to Joint Legis. Budget Com., analysis of 2002-2003 Budget Bill, *supra,* p. E-84 [9th grade class size reduction program].) Indeed, section 64000 was amended in 2001 to include in the consolidated application process funds for categorical programs "established under the federal Class Size Reduction Initiative ([Pub.L. No.] 106-554)." (§ 64000, subd. (a)(15).) Although the District's class size reduction program was not adopted pursuant to this federal initiative, the statutory reference to it as a categorical program is nonetheless a telling indication of what this term is understood to encompass.

While *Kamin* correctly holds that what is now section 44909 "does not apply to a teacher who is employed as a full-time classroom teacher to conduct a class that is part of the regular educational program of a school" (*Kamin, supra,* 72 Cal.App.3d at p. 1020), classes that are reduced in size because of funding specially applied for and obtained under the Class Size

Reduction Program are not "part of the regular educational program of a school." In *Kamin,* as in *American Federation of Teachers, supra,* 77 Cal.App.3d 100, the focus was not upon the question of whether particular programs were categorically funded, but on whether teachers who were hired to replace other tenured teachers who were transferred to categorically funded programs were themselves to be treated as though they were teaching in the specially funded program. The courts in those cases held they were not, because they were "paid with regular school district funds and . . . assigned . . . to teach a regular class." (*Id.* at p. 105.) Passing over the fact that the statute has subsequently been amended to bring even such replacement teachers within the scope of section 44909, those who are teaching in a class reduced in size because of the Class Size Reduction Program are paid with funds derived from the special program, rather than from base funding for unspecified general educational purposes. They are teaching classes created by the special program rather than the regular, larger, classes that presumably otherwise would have been taught. Thus, the qualification placed upon the statute by *Kamin* and *American Federation of Teachers* does not apply to a teacher such as Zalac specifically hired to teach a class reduced in size as part of the Class Size Reduction Program.

The rationale underlying section 44909—permitting school districts to hire additional teachers for special programs so long as the designated funds remain available, while retaining the flexibility to readily lay these teachers off if and when the funding is discontinued—applies equally to a program designed to reduce class size as it does to programs creating identifiable classes outside the normal curriculum. In either case, if the program is not state mandated, school districts might be disinclined to participate if there were a risk that teachers hired to implement the program would have seniority rights if the particular program should be discontinued. As the record in this case demonstrates, there are other means by which such employees can be terminated even if section 44909 does not apply, but they are more cumbersome and section 44909 was enacted to provide school districts with an extra measure of flexibility in employing teachers for these specially funded programs. While the increasing use of special educational programs to supplement school district funding may raise questions as to whether the reach of section 44909, and the number of teachers being denied credit towards tenure, is extending farther than desirable, these are questions properly addressed to the Legislature rather than to the courts.

Although the Class Size Reduction Program thus qualifies as a categorically funded program, under section 52126 funds are not apportioned to permit the retention of a specific number of additional teachers, but participating school districts receive a fixed dollar amount for each student enrolled in classes in which the program is implemented. The record before the

court does not reflect whether an additional kindergarten class was created to bring enrollment down to 20 or fewer students when the District entered the program, but it does show that no kindergarten class was eliminated when the District dropped out of the program. Although no Class Size Reduction Program funds were received for the 1999-2000 school year, two kindergarten classes continued to be taught and Zalac's employment contract nonetheless recited that she was employed that year in a temporary classification under section 44909. While the recital was accurate for the first two years of her employment, it was not accurate for the third year, since the program had been discontinued at her school, and Zalac was then entitled to be treated as a probationary employee. When she was laid off the following year, she was not being terminated at the expiration of the Class Size Reduction Program, and section 44909 no longer authorized her peremptory release.[12] At that point she could be laid off only in accordance with the procedures specified in sections 44955 and 44949. (*Hart Federation of Teachers v. William S. Hart Union High Sch. Dist.* (1977) 73 Cal.App.3d 211, 215-216 [141 Cal.Rptr. 817] ["a section 13329 [now section 44909] teacher is entitled to the procedural rights provided in . . . sections 13433 and 13447 [now sections 44955 and 44949] unless the discharge is for one of the two reasons excepted in 13329 [now section 44909], i.e., expiration of the contract with an outside agency, or expiration of the specifically funded project"].)

II. *Was Zalac Terminated in Accordance with the Rights of a Permanent Employee?*

Although the District considered Zalac a temporary employee and attempted to terminate her under section 44909, it recognized from the outset that its right to do so might be questioned, and out of "an abundance of caution" also attempted to comply with the procedures required to terminate a permanent employee for economic reasons. Within the time period specified in section 44949, subdivision (a), the District gave Zalac a notice that her services would not be required for the ensuing year because of a reduction in the number of certificated employees caused by the discontinuance or reduction of certain particular kinds of services, as authorized by section 44955[13] and, when Zalac requested a hearing to determine if such cause existed, provided her with a hearing as called for by section 44949,

[12]Since Zalac had served for at least 75 percent of the school year during her first two years and should have been treated as a probationary employee during the third year, the two conditions for including her service towards obtaining permanent status that are specified in section 44909 were satisfied. Under section 44929.21, subdivision (b), Zalac obtained permanent status upon commencement of the third year. (See fn. 7, *ante.*)

[13]Section 44955, subdivision (b) provides in part as follows: "[W]henever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school

subdivisions (b) and (c). As noted above, the administrative law judge who conducted the hearing concluded that proper cause existed for Zalac's termination under section 44955.

Zalac challenges this conclusion on two grounds. First, she contends that the District made no reduction in a "particular kind of service" (PKS) because at the time of the hearing no determination had been made as to the number of kindergarten classes that would be taught in the following year, and subsequent developments have shown that there were still two classes, the same number as when Zalac was employed. Zalac correctly contends that a termination under this provision may be made only if services are in fact reduced. "It is true that a district may not dismiss an employee pursuant to section [44955] and yet continue the identical kind of service and position held by the terminated employee." (*Campbell Elementary Teachers Assn., Inc. v. Abbott* (1978) 76 Cal.App.3d 796, 812 [143 Cal.Rptr. 281].) If there is no difference in the method or manner of providing a particular service, a school district may not justify the substitution of personnel by claiming a reduction in services. (*Santa Clara Federation of Teachers v. Governing Board* (1981) 116 Cal.App.3d 831, 843-844 [172 Cal.Rptr. 312] [health services were not reduced by virtue of replacing certificated nurses with other employees].)

However, *Gassman v. Governing Board* (1976) 18 Cal.3d 137 [133 Cal.Rptr. 1, 554 P.2d 321] does not stand for the proposition that "the mere loss of funds does not justify economic layoffs," as Zalac contends. Rather, that case, like many others that might be cited (e.g., *Cousins v. Weaverville Elementary School Dist.* (1994) 24 Cal.App.4th 1846 [30 Cal.Rptr.2d 310]), holds that probationary and permanent employees may be terminated for economic reasons only as authorized by section 44955. "A school district facing an anticipated unbalanced budget has a variety of means of meeting its financial problems: it may, for example, reduce the number of permanent

year . . . and when in the opinion of the governing board of the district it shall have become necessary by reason of any of these conditions to decrease the number of permanent employees in the district, the governing board may terminate the services of not more than a corresponding percentage of the certificated employees of the district, permanent as well as probationary, at the close of the school year. Except as otherwise provided by statute, the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render." The section also describes other circumstances under which terminations may occur, including a reduction in average daily attendance—to which the reference to the "corresponding percentage" of certificated employees alone applies (*San Jose Teachers Assn. v. Allen* (1983) 144 Cal.App.3d 627, 635-636 [192 Cal.Rptr. 710, 52 A.L.R.4th 283])—but the District did not claim that any other circumstance provided cause for Zalac's termination.

and probationary teachers pursuant to section [44955] . . . ." (*Gassman v. Governing Board, supra,* at p. 147.) In the setting of an elementary school, a reduction in the number of teachers is often the only way that services may be reduced. "Because elementary schools, for the most part, are limited to identifying a service simply as 'classroom teaching,' this must be recognized as a particular kind of service in order that elementary schools are able to reduce the only services they provide." (*San Jose Teachers Assn. v. Allen, supra,* 144 Cal.App.3d at p. 637.) "In PKS cases the determination of the amount by which a service is to be reduced is the determination of the number of positions to be eliminated." (*Id.* at p. 636.) A school board "may 'reduce services' by determining that preferred services shall be reduced in extent because fewer employees are made available to deal with the pupils involved." (*Rutherford v. Board of Trustees* (1976) 64 Cal.App.3d 167, 178-179 [134 Cal.Rptr. 290].) And that is precisely what the record reflects occurred here. Faced with a shortfall of funds, caused in part by the loss of Class Size Reduction Program funding, the Board determined that it was necessary to reduce the number of teaching positions—a particular kind of service—and thus the number of teachers. While it may be that this reduction did not result in there being fewer kindergarten classes than previously, Zalac's layoff nonetheless resulted in the reduction of the District's teaching staff by one. Whether by larger classes, regrouping of other classes, or otherwise, there was a PKS reduction that authorized the termination under section 44955.

When a certificated employee is to be laid off under section 44955, the District must terminate the employee with the least seniority. "Except as otherwise provided by statute, the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render." (§ 44955, subd. (b).) Zalac's second challenge to the District's compliance with section 44955 is not that she was senior to any certificated employee who was retained, but that she had equal seniority with another retained teacher—Jacqueline Sayer—and that the District failed to comply with the further provision in section 44955, subdivision (b) that addresses that situation. Under the statute, "[a]s between employees who first rendered paid service to the district on the same date, the governing board shall determine the order of termination solely on the basis of needs of the district and the students thereof."[14] Zalac contends that no good faith evaluation was made by the District to determine whether she or Ms. Sayer best met the

---

[14]Section 44955, subdivision (b) goes on to provide that "[u]pon the request of any employee whose order of termination is so determined," the board shall, no later than five days prior to the hearing, furnish a written "statement of the specific criteria used in

District's needs. The District superintendent acknowledged that such an evaluation had not been made initially because Zalac was considered to be a temporary employee who was being terminated under section 44909 rather than under section 44955. However, after the superintendent had sent layoff notices to Zalac, he testified that he mentally applied the point system contained in the preexisting written criteria and determined that under the criteria Zalac was properly terminated prior to Sayer. While Zalac's skepticism concerning the good faith of this evaluation is understandable since it was not made until after the decision to terminate her had been reached, we do not find in section 44955 the "implicit" requirement urged by Zalac that the analysis must be performed before a layoff notice is issued. That undoubtedly is the better practice, and the failure to follow it may provide support for an attack upon the good faith of an evaluation—a requirement that unquestionably is implicit in the statute. Here, however, the written criteria were established by the District prior and without reference to this particular controversy, and they are entirely objective: points are awarded for various credentials and years of teaching experience. Applying this system, the superintendent testified that Zalac received only 10 points while Sayer received 13, and Zalac has offered no reason to question these numbers. Therefore, while the District may have been proceeding at its peril in sending out the layoff notices before having made this comparison, there is no basis to conclude that it was not done properly and in good faith. Therefore, the District was entitled to terminate Zalac under all of the provisions of section 44955.

## DISPOSITION

The judgment denying the petition for a writ of mandate is affirmed. Although we agree with the trial court's conclusion that the Class Size Reduction Program is a categorically funded program and it is not required by federal or state statute, Zalac was employed by the District beyond the expiration of that program in her school and thus was entitled to the protections against termination for economic reasons provided by sections 44949 and 44955. However, we conclude with the administrative law judge that Zalac was terminated in accordance with those protective provisions. This disposition renders it unnecessary to consider Zalac's further contention

determining the order of termination and the application of the criteria in ranking each employee relative to the other employees in the group. This requirement . . . shall not be interpreted to give affected employees any legal right or interest that would not exist without such a requirement." The record does not reflect that Zalac made such a request. The record does contain the District's written criteria for determining the order of termination among certificated employees with the same date of paid service but, as stated in the text, no writing applying the criteria to Zalac and Sayer was ever prepared.

that she was entitled to an award of attorney fees. The Board shall recover its costs on appeal.

Corrigan, Acting P. J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 11, 2002.