[No. F048665. Fifth Dist. Dec. 19, 2006.]

BAKERSFIELD ELEMENTARY TEACHERS ASSOCIATION, Plaintiff and Respondent, v.
BAKERSFIELD CITY SCHOOL DISTRICT et al., Defendants and Appellants.

1264

COUNSEL

Littler Mendelson, Barrett K. Green and Daniel Cravens for Defendants and Appellants.

Law Offices of Margaret A. Chidester & Associates, Margaret A. Chidester and Cathie L. Fields for California School Boards Association's Education Legal Alliance as Amicus Curiae on behalf of Defendants and Appellants.

Driscoll & Associates and Thomas J. Driscoll, Jr., for Plaintiff and Respondent.

Joseph R. Colton, Beverly Tucker, Rosalind D. Wolf, Robert E. Lindquist, Brenda E. Sutton-Wills, Michael D. Hersh and John F. Kohn for California Teachers Association as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

HILL, J.—On February 25, 2003, faced with mounting uncertainties about a state budget for the upcoming fiscal year, the governing board of the Bakersfield City School District (the District) adopted a resolution approving a reduction or discontinuation of some "particular kind[s] of service" (PKS) specified in the resolution (see Ed. Code, § 44955),[1] which in turn would necessitate the elimination of up to 89 certificated positions (teachers and counselors) in the 2003–2004 school year. The resolution directed the superintendent "to send appropriate notices to all employees, including temporary employees, whose positions may be affected by virtue of this action."

In fact, the superintendent then sent notices to over 225 certificated employees: "nonreemployment" notices to some 74 persons classified by the District as probationary employees (§ 44949), and about 154 "release" notices to persons classified as temporary employees (§ 44954). Within the latter classification, the District included all teachers and counselors holding anything less than a regular credential, which in this case meant all those working under an internship credential, a preintern certificate, an emergency teaching permit, or a credential waiver. As we will explain, there are several significant differences between probationary and temporary employees in terms of layoff procedures and reemployment rights, which in turn affect their opportunities to accrue seniority and permanent status. Probationary employ-

---

[1] Except as noted, all further statutory citations will refer to the Education Code (the Code).

ees, for example, but not temporary employees, have the right to an administrative hearing to determine if a PKS layoff is supported by legitimate economic reasons. (§§ 44949, 44955; *San Jose Teachers Assn. v. Allen* (1983) 144 Cal.App.3d 627 [192 Cal.Rptr. 710].)

The nonmanagement employees, both probationary and temporary, who received the layoff notices all were members of the Bakersfield Elementary Teachers Association (BETA). Most of the probationary employees, acting through BETA, exercised their right to a hearing. BETA argued at the hearing, among other things, that the rights of the probationary employees, or at least their relative seniority, could not be determined without regard to the temporary employees, many of whom BETA claimed had been misclassified and actually were entitled under the Code to be treated as probationary. The administrative law judge (ALJ) found that even if this were true, it would not affect the seniority rankings of the probationary employees because, he said, service under an emergency permit (the basis upon which the District had made some of the temporary classifications) does not count toward seniority. The ALJ concluded the District's proposed layoffs were reasonable under the circumstances, and the governing board adopted the ALJ's proposed decision without change.

As it turned out, the District was able to rehire all of the certificated employees it had classified as probationary, and 87 of the employees it had classified as temporary, for the 2003–2004 school year.

BETA, on behalf of its members affected by the layoffs, brought the present action against the District on August 6, 2003.[2] It sought a writ of mandate directing the District to reinstate and reclassify the temporary employees (Code Civ. Proc., § 1085); a writ of administrative mandate setting aside the District's layoff of the probationary employees (Code Civ. Proc., § 1094.5); declaratory relief establishing the employees' rights under the Education Code as to classification and seniority; and injunctive relief prohibiting the misclassification of certificated employees. The trial court granted the requested relief, but stayed its application pending this appeal by the District.

We will affirm the judgment insofar as it holds the District's policy of classifying teachers and counselors solely on the basis of their certification is invalid, and insofar as it directs the District to reinstate the misclassified

---

[2] BETA's petition identified 119 persons whom it claimed the District had misclassified as temporary employees, and 68 persons classified as probationary employees whom it claimed had been laid off improperly.

employees, for the 2003–2004 school year, to positions and status consistent with their correct classification. We will remand the matter for further proceedings to determine the employees' correct classification, and the amount of backpay and benefits, if any, to which each is entitled. We will reverse the judgment insofar as it orders reinstatement beyond the 2003–2004 school year, and insofar as it denies the District an opportunity to present evidence in mitigation of the employees' claims for lost compensation.

## DISCUSSION

### Standard of Review

"Ordinarily, a trial court's findings and judgment on a petition for writ of mandate are upheld if supported by substantial evidence. [Citation.] However, the trial court's construction of a statute is purely a question of law and is subject to de novo review on appeal. [Citation.] The principles governing the proper construction of a statute are well established . . . : 'Courts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ." [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] " 'The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " [Citations.] "Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' " (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375–376 [119 Cal.Rptr.2d 642] (*Golden Valley*), italics omitted.)

The principal issue on appeal is whether some or all of the teachers and counselors classified by the District as temporary employees properly should have been classified instead as probationary. If so, it follows we then must determine the effect, if any, of this misclassification on their dismissals, and on the seniority and reemployment rights of the employees the District classified as probationary. We begin, however, with the District's contention

the temporary employees are barred by the doctrine of laches from objecting to their classification.

## I. Did the Temporary Employees Wait Too Long to Object to Their Classification?

When it becomes necessary, as the result of a reduction or discontinuation of services within a district, to reduce the number of permanent or probationary employees, the district must give notice to the affected employees, setting out reasons for the action and the employees' right to a hearing, no later than March 15. (§§ 44955, 44949; *Cousins v. Weaverville Elementary School Dist.* (1994) 24 Cal.App.4th 1846, 1854 [30 Cal.Rptr.2d 310] (*Cousins*) [distinguishing procedure to lay off probationary employees for economic reasons from procedure to nonreelect them for subsequent year]; *Gassman v. Governing Board* (1976) 18 Cal.3d 137, 144–145 [133 Cal.Rptr. 1, 554 P.2d 321] [distinguishing procedure to lay off probationary employees for economic reasons from procedure to dismiss them for unsatisfactory performance].)[3] If the district fails to give the required notice by March 15, the employee "shall be deemed reemployed for the ensuing school year." (§ 44955, subd. (c).)

---

[3] Section 44955 provides in part:

"(b) Whenever in any school year . . . a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, . . . and when in the opinion of the governing board of the district it shall have become necessary by reason of any of [this] condition[] to decrease the number of permanent employees in the district, the governing board may terminate the services of not more than a corresponding percentage of the certificated employees of the district, permanent as well as probationary, at the close of the school year. Except as otherwise provided by statute, the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render. [¶] . . . [¶]

"(c) Notice of such termination of services shall be given before the 15th of May *in the manner prescribed in Section 44949*, and services of such employees shall be terminated in the inverse of the order in which they were employed . . . . In the event that a permanent or probationary employee is not given the notices and a right to a hearing as provided for in Section 44949, he or she shall be deemed reemployed for the ensuing school year." (Italics added.)

Section 44949, in turn, provides in part:

"(a) No later than March 15 and before an employee is given notice by the governing board that his or her services will not be required for the ensuing year for the reasons specified in Section 44955, the governing board and the employee shall be given written notice by the superintendent of the district or his or her designee . . . that it has been recommended that the notice be given to the employee, and stating the reasons therefor. [¶] . . . [¶]

"(b) The employee may request a hearing to determine if there is cause for not reemploying him or her for the ensuing year . . . ."

No permanent employee may be laid off if a probationary employee, or any other employee of less seniority, occupies a position the permanent employee is certificated and competent to fill. (§ 44955, subd. (c).) Likewise, a probationary employee may "bump" another probationary employee with less seniority. Seniority is determined as of the date the employee "first rendered paid service in a *probationary* position." (§ 44845, italics added.) Temporary employees therefore do not accrue seniority, and so must be released before probationary employees.[4]

Moreover, temporary employees, unlike permanent and probationary employees, may be dismissed at the pleasure of the board and need be given only a more limited form of notice before the end of the school year, and no hearing. (§ 44954; *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 917–918 [129 Cal.Rptr.2d 811, 62 P.3d 54] (*Kavanaugh*).)[5] (The school year runs from July 1 to June 30 (§ 37200).)

Thus, if the employees in this case whom the District classified as temporary were in fact entitled to be classified as probationary, the District's failure to give them a timely notice of nonreemployment caused them in effect to be rehired for the following year. It also, depending upon *when* they should have been classified as probationary employees, may have changed the relative seniority of the other employees the District had classified as probationary. (Some of the temporary employees reportedly had worked in the District with that classification for several years.)

The District maintains the temporary employees, because they waited until after March 15 to challenge their classification, were guilty of laches. Had they objected sooner, the District urges, it "could have simply provided them with notices of layoff and included them in the layoff hearing." And, it adds,

---

[4] The District relies on this requirement as justification for its decision to lay off many more certificated employees than it had been authorized to lay off by the board's resolution. It maintains, in effect, that any authorization to lay off probationary employees necessarily assumes that all temporary employees will be laid off first. BETA disputes this claim, and challenges the layoffs on the additional ground, apart from the classification issue, that the District exceeded its authority. For reasons that will appear, we do not reach this issue.

[5] Section 44954 provides:

"Governing boards of school districts may release temporary employees requiring certification qualifications under the following circumstances:

"(a) At the pleasure of the board prior to serving during one school year at least 75 percent of the number of days the regular schools of the district are maintained.

"(b) After serving during one school year the number of days set forth in subdivision (a), if the employee is notified before the end of the school year of the district's decision not to reelect the employee for the next succeeding year."

"[s]ince the [ALJ] ultimately concluded that there was good cause for the layoffs, the affected temporary teachers would have lost their positions, even under their own theory."[6]

 Laches is an equitable defense based on the principle that those who neglect their rights may be barred from obtaining relief in equity. (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 16, p. 302.) " 'The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68 [99 Cal.Rptr.2d 316, 5 P.3d 874].)

Laches is a question of fact for the trial court, but may be decided as a matter of law where, as here, the relevant facts are undisputed. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1334 [101 Cal.Rptr.2d 591].)

The District contends that each of the temporary employees was aware of his or her classification by virtue of having signed an employment contract identifying them as such upon being hired for the 2002–2003 school year; that each such employee acquiesced in this classification by failing to object to it; and that the District relied to its detriment on the employees' silence. However, this claim overlooks the fact the District led these employees to believe they had no choice but to acquiesce.

The District utilized different contract forms depending on whether the employee possessed an emergency permit, a preintern certificate, or an internship credential, or was working in a categorically funded program. Each of the forms, however, required the employee to acknowledge that, as a temporary employee, he or she had none of the rights of, nor any claim to, probationary status. The following provision is typical: "Status of Employment: Employee specifically acknowledges that this agreement does not establish any right to probationary or permanent employment status. Employee further acknowledges that the District may terminate the [pre-internship, internship, or temporary employment] on any basis . . . without any obligation to provide a statement of reasons, evidence of cause, or a right to a hearing. Employee further acknowledges that this agreement does not

---

[6] Including the temporary employees in the layoff hearing would not have resolved the question of whether they should have been classified as probationary employees, nor would it have established their relative seniority in that classification.

establish any right to reemployment in any status beyond the term of this agreement."

■ However, any contractual provision purporting to waive the protections accorded certificated school employees by the Code, including the provisions governing their classification and termination, is "null and void." (§ 44924; see *Fine v. Los Angeles Unified School Dist.* (2004) 116 Cal.App.4th 1070, 1077, fn. 7 [10 Cal.Rptr.3d 876] (*Fine*); *Zalac v. Governing Bd. of Ferndale Unified School Dist.* (2002) 98 Cal.App.4th 838, 849 [120 Cal.Rptr.2d 615] (*Zalac*); *United Teachers—L.A. v. Los Angeles Unified School Dist.* (1994) 24 Cal.App.4th 1510, 1517–1519 [29 Cal.Rptr.2d 897].) "The statutory provisions in the Education Code, governing the rights of teachers, are an expression of public policy; they cannot be bargained away either expressly or impliedly." (*Hart Federation of Teachers v. William S. Hart Union High Sch. Dist.* (1977) 73 Cal.App.3d 211, 214 [141 Cal.Rptr. 817] (*Hart Federation of Teachers*).)

"Although the contracts of employment accepted by petitioners purported to fix their status as that of temporary teachers, they are not estopped to claim probationary status if the statutory scheme of the Education Code compels the latter classification under the particular facts of each petitioner's employment situation." (*Santa Barbara Federation of Teachers v. Santa Barbara High Sch. Dist.* (1977) 76 Cal.App.3d 223, 227–228 [142 Cal.Rptr. 749] (*Santa Barbara Federation of Teachers*).)

■ The District argues waiver and laches are distinct doctrines, and to say a teacher cannot be required to waive the benefits of the Code is different than saying he or she cannot be precluded by laches from claiming those benefits. Be that as it may, it misses the point. The District may not now complain the temporary employees waited too long to assert a right the District misled them into believing they already had given up.[7] "One who comes into equity must come with clean hands." (13 Witkin, Summary of Cal. Law, *supra*, Equity, § 9, p. 289; *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 576 [199 Cal.Rptr. 773, 676 P.2d 584] [" 'He who seeks equity must do equity' "].)

---

[7] The record includes the declaration of a substitute teacher who was asked in February of 2004 to sign a contract for temporary employment that also required her to initial a provision expressly waiving any right to claim she "is or may become a probationary employee." She signed the contract but refused to initial the waiver, writing in instead that the waiver was "void under Education Code 44924." According to her declaration, she was terminated the next day.

The District's reliance on *American Federation of Teachers v. Board of Education* (1977) 77 Cal.App.3d 100 [143 Cal.Rptr. 264] (*American Federation of Teachers*) is unavailing. That case involved a teacher hired to replace a more experienced one who had been assigned to a categorically funded reading program. The district classified the teacher as a temporary employee on the ground she was working in a categorically funded position (former § 13329; see now § 44909) rather than on the ground she was a long-term replacement for a teacher on leave (former § 13337.3; see now § 44920). The district gave the teacher a release notice at the end of the school year, subject to the renewal of the funding for the reading program. She then sought a writ of mandate to compel the district to rehire her as a probationary teacher. She argued her temporary classification was incorrect because she was *not* employed in a categorically funded program; she therefore was entitled to the default classification of a probationary teacher (former § 13334; see now § 44915); and had been effectively rehired in this classification given the district's failure to give her a timely notice of nonreemployment.

The trial court agreed the teacher was not a categorical employee. It also found, however, that her identification as such in the employment contract was not controlling; that she was in fact a long-term replacement teacher; and that in either event she properly was classified as a temporary employee. In other words, the classification, if not the basis for it, was correct and the teacher had suffered no prejudice. (*American Federation of Teachers*, *supra*, 77 Cal.App.3d at pp. 105–108.) Although this conclusion ought to have ended the matter, the trial court then went on to hold the teacher had waited too long to bring it up (i.e., until after March 15), was guilty of laches, and therefore was estopped to claim probationary status. It found the district had explained to her when she signed the contract that she was a temporary employee, along with the implications of that status on her reemployment for the following year, and the district had relied in good faith on her apparent acceptance of those conditions. (*Id.* at p. 109.) The appellate court affirmed the judgment as to both the teacher's classification and the finding of laches. (*Ibid.*)

Apart from the fact the discussion of laches in *American Federation of Teachers* was dictum, the circumstances are distinguishable from those in the present case. There, the teacher's classification ultimately was correct; here, as we are about to explain, it was not correct (and, arguably, the District should have known it was not). Further, unlike the present case, nothing in *American Federation of Teachers* suggests the teacher's silence as to her classification was induced by any misrepresentations made to her by the district. Here, the District cannot be said to have believed in good faith that the teachers' silence indicated an acceptance of their classification.

## II. Were the Temporary Employees Misclassified?

As we have said, the District classified certificated employees having less than a regular (i.e., preliminary or clear) credential as temporary employees, and required them to sign a contract acknowledging their temporary status.[8] It thus made the employee's *classification* dependent upon his or her *certification*. As a general rule, however, classification and certification operate independently of one another. The statutory classification scheme applies typically to employees occupying "positions requiring certification qualifications." (See §§ 44917 [substitute employee], 44915 [probationary employee], 44920 [temporary employee], 44929.21, subd. (b) [permanent employee], 44909 [categorically funded programs]; see also *Golden Valley, supra,* 98 Cal.App.4th at p. 380 [teacher with emergency credential may be employed in a position requiring certification qualifications].)[9] That is, a person who has been determined to be qualified to teach is not a temporary employee simply because he or she is not yet fully accredited, but rather because he or she occupies a position the law defines as temporary. It is necessary, therefore, to differentiate a teacher's classification from his or her certification.

---

[8] Section 44916 provides in part: "The classification [of a certificated employee] shall be made at the time of employment and thereafter in the month of July of each school year. At the time of initial employment during each academic year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid. If a school district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed. If a written statement does not indicate the temporary nature of the employment, the certificated employee shall be deemed to be a probationary employee of the school district, unless employed with permanent status." (See also *Kavanaugh, supra,* 29 Cal.4th at p. 926 [" 'time of . . . initial employment' " refers to employee's first day of paid service].)

[9] " 'Education position' or 'position requiring certification qualifications' includes every type of service for which certification qualifications are established by or pursuant to Sections 44000 to 44012, inclusive [definitions], Section 44065 [administrative or supervisory functions requiring credential], and Chapter 2 (commencing with Section 44200) [teacher credentialing] of this part." (§ 44001.)

"A 'credential' includes a credential, certificate, life document, life diploma, permit, certificate of clearance, or waiver issued by the [Commission on Teacher Credentialing]." (§ 44002.)

"The word 'certificate' used as a noun refers to the document issued by a county board of education to license the holder to perform the service specified in the certificate." (§ 44004.) "The word 'certificate' used as a verb refers to the act of licensing individuals for employment in educational positions." (§ 44005.) "The term 'certificated person' refers to a person who holds one or more documents such as a certificate, a credential, or a life diploma, which singly or in combination license the holder to engage in the school service designated in the document or documents." (§ 44006.)

## A. *Teacher Classification*

█ The Code permits certificated employees to be classified in one of four ways: permanent, probationary, substitute, or temporary. (*Kavanaugh, supra,* 29 Cal.4th at p. 916.) "The code authorizes the governing boards of school districts to hire, classify, promote and dismiss certificated employees (i.e., teachers) (see § 44831), but establishes a complex and somewhat rigid scheme to govern a board's exercise of its decisionmaking power." (*Kavanaugh, supra,* 29 Cal.4th at p. 917.)

"A certificated teacher's classification . . . governs the level of statutory job protection the teacher enjoys and controls the level of procedural protections that apply if he or she is not reelected. In general, permanent employees may not be dismissed unless one or more statutorily enumerated grounds are shown. (§ 44932.) Probationary employees may not be dismissed during the school year except for cause or unsatisfactory performance (§ 44948.3), but, on timely notice, 'may be nonreelected [for the following year] without any showing of cause, without any statement of reasons, and without any right of appeal or administrative redress.' [Citation.]" (*Kavanaugh, supra,* 29 Cal.4th at p. 917.) "[B]ut, if nonreelection is for economic reasons (such as a decline in daily attendance or discontinuance of services), [a probationary] teacher is entitled to certain procedural protections pursuant to section 44949. [Citation.]" (*Id.,* at p. 917, fn. 4; see also *Cousins, supra,* 24 Cal.App.4th at p. 1854.)

" 'Substitute and temporary employees, on the other hand, fill the short range needs of a school district and generally may be summarily released.' [Citation.] Thus, temporary teachers may be dismissed '[a]t the pleasure of the [governing] board prior to serving during one school year at least 75 percent of the number of days the regular schools of the district are maintained' (§ 44954, subd. (a)), and after that time so long as the temporary employee is notified before the end of the school year (*id.,* subd. (b)). The overall scheme the Legislature has created in the Education Code is thus specific as to the rights and responsibilities of certificated teachers and their employers, the governing boards." (*Kavanaugh, supra,* 29 Cal.4th at pp. 917–918; see also *Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629] (*Balen*); *Haase v. San Diego Community College Dist.* (1980) 113 Cal.App.3d 913, 917–918 [170 Cal.Rptr. 366] (*Haase*).)

A certificated employee is classified as permanent, i.e., acquires tenure, if, after having been employed for two complete successive school years in a position requiring certification qualifications, he or she is reelected for the

following year. (§ 44929.21, subd. (b).)[10] Generally, this provision applies only to *probationary* employees who are reelected after two years.[11] (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 279 [52 Cal.Rptr.2d 115, 914 P.2d 193]; *Cousins, supra,* 24 Cal.App.4th at p. 1849; *Schnee v. Alameda Unified School Dist.* (2004) 125 Cal.App.4th 555, 564 [22 Cal.Rptr.3d 800] (*Schnee*) ["Regardless of the number of years . . . employee may have served in a temporary status in a position with certification qualifications, the employee must serve one year as a probationary employee before acquiring permanent status"].)

■ "The probationary plan envisions a twofold purpose: it allows the new teacher sufficient time to gain additional professional expertise, and provides the district with ample opportunity to evaluate the instructor's ability before recommending a tenured position." (*Balen, supra,* 11 Cal.3d at p. 829.)

"Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees." (§ 44915.) Although this section makes no reference to temporary employees, other neighboring sections of the Code expressly authorize that classification in some situations. (See, e.g.,

---

[10] Section 44929.21, subdivision (b) provides:

"Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district.

"The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district in a position or positions requiring certification qualifications, of the decision to reelect or not reelect the employee for the next succeeding school year to the position. In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year.

"*This subdivision shall apply only to probationary employees* whose probationary period commenced during the 1983–84 fiscal year or any fiscal year thereafter." (Italics added; see also *Culbertson v. San Gabriel Unified School Dist.* (2004) 121 Cal.App.4th 1392 [18 Cal.Rptr.3d 234] (*Culbertson*).)

[11] A year of employment as a temporary teacher may, in some cases, be treated as a year of probationary service for purposes of attaining permanent status if the employee is rehired for the following year "as a probationary employee in a position requiring certification qualifications" (§ 44909); "in a position requiring certification qualifications" (§ 44917); "as a probationary employee" (§ 44918); or "in a vacant position requiring certification qualifications" (§ 44920). However, service performed by a certificated employee under an emergency teaching permit will *not* count toward permanent status. (§ 44911; *Summerfield v. Windsor Unified School Dist.* (2002) 95 Cal.App.4th 1026 [116 Cal.Rptr.2d 233] (*Summerfield*).)

§§ 44919, 44920.) Thus, section 44915 has been understood to make probationary status the default classification for certificated employees who are not otherwise required by the Code to be classified as permanent, substitute, or temporary employees. (See, e.g., *Golden Valley*, *supra*, 98 Cal.App.4th at pp. 378–382 [teacher may be classified as probationary pursuant to § 44915 although working under emergency permit]; *Hart Federation of Teachers*, *supra*, 73 Cal.App.3d at p. 215 [former § 13334; now § 44909, makes probationary classification "catch-all" status for teachers not properly classified as something else].)

The District disputes this interpretation, however, and contends, essentially, that it retains the discretion to classify employees as temporary based on criteria—in this case, the status of their certification to teach—other than those specified in the Code. That is, it argues it is permitted to do whatever the Code does not expressly prohibit it from doing. "Absent direct regulation to the contrary," the District maintains, "the designation of the employees [working under emergency teaching permits] as temporary should be deemed permissible under the 'permissive code' provisions of . . . section 35160."[12]

The Code's "complex and somewhat rigid" classification scheme is intended, however, to limit rather than to enlarge the power of school districts to classify teachers as temporary employees. (*Kavanaugh*, *supra*, 29 Cal.4th at p. 917; see *Turner v. Board of Trustees* (1976) 16 Cal.3d 818, 825 [129 Cal.Rptr. 443, 548 P.2d 1115] [statutory scheme represents the "delicate balancing" necessary to accommodate students' need for education, teachers' need for job security, and school boards' need for flexibility in evaluating and hiring employees].) "The Legislature . . . has restricted the flexibility of a school district in the continued use of temporary employees [citations], for otherwise the benefits resulting from employment security for teachers could be subordinated to the administrative needs of a district." (*Haase*, *supra*, 113 Cal.App.3d at p. 918.)

"The essence of the statutory classification system is that continuity of service restricts the power to terminate employment which the institution's governing body would normally possess. Thus, the Legislature has prevented the arbitrary dismissal of employees with positions of a settled and continuing nature, i.e., permanent and probationary teachers, by requiring notice and hearing before termination. [Citations.] Substitute and temporary teachers, on the other hand, fill the short range needs of a school district, and may be summarily released absent an infringement of constitutional or contractual

---

[12] Section 35160 provides: "On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law[,] and which is not in conflict with the purposes for which school districts are established."

rights. [Citations.] *Because the substitute and temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be strictly interpreted.*" (*Balen, supra,* 11 Cal.3d at p. 826, fn. omitted, italics added.)

The Code recognizes two general kinds of temporary employees: those who are employed to serve for less than three or four months, or in some types of limited, emergency, or temporary assignments or classes (see §§ 44919, 44921, 44986);[13] and those who are employed for up to one year to replace a certificated employee who is on leave or has a lengthy illness (see §§ 44920, 44918). We will refer to these as "short-term temporary teachers" and "long-term replacement teachers," respectively (and include counselors in those categories as well). In addition, persons employed in categorically funded programs or in programs operated by a district under contract are treated *like* temporary employees in certain respects (§ 44909), as are persons employed as substitute teachers. (§ 44917.)[14]

---

[13] Section 44919 provides:

"(a) Governing boards of school districts shall classify as temporary employees those persons requiring certification qualifications, other than substitute employees, who are employed to serve from day to day during the first three school months of any school term to teach temporary classes not to exist after the first three school months of any school term or to perform any other duties which do not last longer than the first three school months of any school term, or to teach in special day and evening classes for adults or in schools of migratory population for not more than four school months of any school term. *If the classes or duties continue beyond the first three school months of any school term or four school months for special day and evening classes for adults, or schools for migratory population, the certificated employee, unless a permanent employee, shall be classified as a probationary employee.* The school year may be divided into not more than two school terms for the purposes of this section.

"(b) Governing boards shall classify as temporary employees persons, other than substitute employees, who are employed to serve in a limited assignment supervising athletic activities of pupils; provided, such assignment shall first be made available to teachers presently employed by the district. Service pursuant to this subdivision shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district.

"(c) In any district, the governing board may, to prevent the stoppage of school district business when an actual emergency arises and persons are not immediately available for probationary classification, make an appointment to a position on a temporary basis for a period not to exceed 20 working days. The person so appointed shall be deemed to be a temporary employee who is employed to serve from day to day. Service by a person in such an appointment on a temporary basis shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district." (Italics added.)

[14] Section 44917 provides in part:

"Except as provided in Section[] . . . 44920, governing boards of school districts shall classify as substitute employees those persons employed in positions requiring certification qualifications, to fill positions of regularly employed persons absent from service.

It appears in the present case that all of the 154 persons classified by the District as temporary employees were working during the 2002–2003 school year in either long-term replacement positions or in categorically funded programs. We therefore will confine our discussion to these two groups.[15]

### 1. *Long-term Replacement Teachers*

By our count, the District treated 133 of the 154 temporary employees as long-term replacement teachers in ongoing classes (§ 44920), and two others as regular teachers in what evidently were temporary classes (§ 44852).[16] All 135 of these teachers possessed something less than a regular credential: 47 had a preintern certificate (§ 44305), 33 had a university internship credential (§ 44450 et seq.), 31 had an emergency teaching permit (§ 44300), four had a credential waiver (§ 44225, subd. (m)), and the remainder had some combination of two of these.[17]

Section 44920 provides in part: "Notwithstanding the provisions of Sections 44917 [substitute employees, see fn. 14, *ante*] and 44919 [short-term temporary employees, see fn. 13, *ante*], the governing board of a school district may employ as a teacher, for a complete school year, but not less than one semester during a school year unless the date of rendering first paid service begins during the second semester and prior to March 15th, *any*

---

"After September 1 of any school year, the governing board of any school district may employ, for the remainder of the school year, in substitute status any otherwise qualified person who consents to be so employed in a position for which no regular employee is available . . . . Inability to acquire the services of a qualified regular employee shall be demonstrated to the satisfaction of the Commission for Teacher Preparation and Licensing.

"Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

[15] According to the trial court's statement of decision, the District "conceded at trial that none of the statutory authorizations for temporary classification [in sections 44852, 44917, 44919, 44920, 44921, or 44986] applied to any of the [teachers and counselors it had classified as temporary employees]." Similarly, the court stated, with respect to the teachers and counselors employed in categorically funded programs, that the District "conceded at trial that there was no evidence that either [the] contracts with outside agencies or [the] specially funded projects had expired or that funding was exhausted." We find no such explicit concessions in the record, but the District does not deny having made them.

[16] Section 44852 provides: "Nothing in this code shall be construed as prohibiting the employment of persons in positions requiring certification qualifications for less than a full school year in temporary schools or classes."

[17] Some of these temporary employees reportedly also had regular credentials, but in subject areas other than those they were assigned to teach. (See, e.g., *Smith v. Governing Bd. of Elk Grove Unified School Dist.* (2004) 120 Cal.App.4th 563 [16 Cal.Rptr.3d 1] (*Elk Grove*) [teacher with social science credential who taught special education classes that were not authorized by her credential was required to work under an emergency specialist permit].)

*person holding appropriate certification documents*, and may classify such person as a temporary employee. *The employment of such persons shall be based upon the need for additional certificated employees during a particular semester or year because a certificated employee has been granted leave for a semester or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board.*" (Italics added.)

 This provision is significant in two respects. First, other than requiring that long-term replacement teachers have "appropriate certification documents," i.e., are qualified to teach the material in the classroom to which they are assigned, this classification is not concerned with the particular type or form of certification the replacement teacher holds. Second, the statute directs that a district may employ no more long-term replacement teachers than it has permanent or probationary teachers absent on leave at any one time. (*Welch v. Oakland Unified School Dist.* (2001) 91 Cal.App.4th 1421, 1431–1432 [111 Cal.Rptr.2d 374] (*Welch*); *Santa Barbara Federation of Teachers, supra,* 76 Cal.App.3d at pp. 232–233 [temporary teacher need not be replacing a *particular* regular teacher on leave]; *Paulus v. Board of Trustees* (1976) 64 Cal.App.3d 59, 62–63 [134 Cal.Rptr. 220] [same].)

Here, the undisputed evidence shows there were at most 22 regular teachers in the District on long-term absences during the 2002–2003 school year. Therefore, the District was not permitted to classify more than this number of teachers as temporary employees under section 44920. The rest were, perforce, probationary teachers unless the District, as it claims, was entitled to classify them as temporary employees based entirely on the fact they possessed something less than a regular credential.

Section 44920 also limits the power of a district to rehire teachers year after year in temporary positions. It goes on to provide:

"Any person employed for one complete school year as a temporary employee [e.g., a long-term replacement teacher] *shall*, if reemployed for the following school year *in a vacant position* requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status.

"For purposes of this section 'vacant position' means a position in which the employee is qualified to serve and which is not filled by a permanent or probationary employee. It shall not include a position which would be filled

by a permanent or probationary employee except for the fact that such employee is on leave." (Italics added.)[18]

A similar provision appears in section 44918, which also requires that long-term replacement teachers must be given priority in filling vacant positions in the district in the year following their temporary service, and that their subsequent employment in a vacant position will, in most circumstances, cause their year of temporary service to be deemed a year of probationary

---

[18] Section 44917 (see fn. 14, *ante*) contains the same provision, with the notable exception that a temporary teacher need not be reemployed the following year in a *vacant* position in order for the previous year's service to be deemed probationary. The final paragraph of section 44917 states: "Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a [omitting the word "vacant"] position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

Moreover, unlike section 44918 (see fn. 19, *post*), section 44917 does not require that the temporary teacher be reemployed the following year as a *probationary* employee in order to receive credit toward permanent status.

In *Santa Barbara Federation of Teachers, supra*, 76 Cal.App.3d 223, the court sought to resolve a similar sort of conflict between former sections 13336, 13336.5, and 13337.3 (see now §§ 44917, 44918 and 44920, respectively) by applying the last-adopted of the three statutes (the predecessor to § 44918), which required (or which the court interpreted to require) that a temporary employee must be rehired in a *vacant* position in order for their temporary service to count toward permanent status. (The court evidently assumed that a teacher cannot be rehired the following year as a probationary employee *except* in a vacant position.) Therefore, the court said, temporary employees are "not automatically entitled to probationary status by virtue of the fact that they have each been reemployed following a year as a temporary teacher." (*Santa Barbara Federation of Teachers, supra*, 76 Cal.App.3d at p. 237.)

In *Kalamaras v. Albany Unified School Dist.* (1991) 226 Cal.App.3d 1571 [277 Cal.Rptr. 577], the court, interpreting essentially the same statute (which had since become § 44918), held that it required a district to rehire a temporary employee (in her *same* position) once she had worked for 75 percent of the days in a school year, notwithstanding the fact she had been given an unsatisfactory evaluation. The court acknowledged that this interpretation arguably gave temporary employees more rights than probationary employees (who can be nonreelected at the end of a school year), but left that to the Legislature to resolve. (*Kalamaras, supra*, 226 Cal.App.3d at p. 1578.) The Legislature responded by amending section 44918 in 1992 to provide, among other things, that a temporary employee shall be reemployed the following year in a vacant position "unless the employee has been released pursuant to subdivision (b) of Section 44954." (Stats. 1992, ch. 336, § 1, p. 1303; see also Historical and Statutory Notes, 27B West's Ann. Ed. Code (1993 ed.) foll. § 44918, p. 339.) Thus, section 44918, which was enacted at the same time as sections 44917 and 44920, has been more recently amended than either of them.

We note in addition that section 44920 applies by its terms "[n]otwithstanding the provisions of Section[] 44917 . . . ," and section 44917 applies by its terms "[e]xcept as provided in Section[] . . . 44920." (See *Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 510–516 [204 Cal.Rptr. 711, 683 P.2d 710] (*Taylor*) (dis. opn. of Mosk, J.) [arguing § 44918 applies only to long-term temporary teacher who replaces regular teacher who has permanently left the district (thus creating a vacancy), and not to one who replaces a regular teacher who is merely on leave and will return, the § 44920 situation].)

service.[19] (*Taylor, supra,* 36 Cal.3d 500 [preferential reemployment rights granted by § 44918 apply to temporary teachers hired under § 44920].) It thus appears that the positions occupied by long-term replacement teachers in excess of the number of positions normally occupied by regular teachers on leave qualified as "vacant positions" within the meaning of sections 44920 and 44918.

As we discuss below, the provision that permits a year of temporary employment to count in some circumstances as the first of two consecutive probationary years needed to acquire permanent status is central to the District's argument, on policy grounds, that it should be able, on a yearly basis, to lay off and rehire teachers having less than a regular credential.

### 2. *Employees in Categorically Funded Programs*

Nineteen of the 154 persons classified by the District as temporary employees evidently were assigned to work in categorically funded programs.

---

[19] Section 44918 provides in part:

"(a) Any employee classified as a substitute or temporary employee, who serves during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in that school year and has performed the duties normally required of a certificated employee of the school district, shall be deemed to have served a complete school year as a probationary employee if employed *as a probationary employee* for the following school year.

"(b) Any such employee *shall* be reemployed for the following school year to fill *any vacant positions* in the school district unless the employee has been released pursuant to subdivision (b) of Section 44954 [requiring district to notify temporary employees before end of school year if they will not be reemployed for following year].

"(c) If an employee was released pursuant to subdivision (b) of Section 44954 and has nevertheless been retained as a temporary or substitute employee by the district for two consecutive years and that employee has served for at least 75 percent of the number of days the regular schools of the district were maintained in each school year and has performed the duties normally required of a certificated employee of the school district, that employee shall receive *first priority* if the district fills a vacant position, at the grade level at which the employee served during either of the two years, for the subsequent school year. In the case of a departmentalized program, the employee shall have taught in the subject matter in which the vacant position occurs. [¶] . . . [¶]

"(e) Permanent and probationary employees subjected to a reduction in force pursuant to Section 44955 shall, during the period of preferred right to reappointment, have prior rights to any vacant position in which they are qualified to serve superior to those rights hereunder afforded to temporary and substitute personnel who have become probationary employees pursuant to this section." (Italics added; see also *Taylor, supra,* 36 Cal.3d 500 [setting out legislative history of § 44918]; *Royster v. Cushman* (1989) 213 Cal.App.3d 65 [261 Cal.Rptr. 458]; *Fair v. Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180 [153 Cal.Rptr. 56] [when there are more eligible teachers than vacant positions, district may use criteria other than seniority to select among them, so long as system used is not arbitrary]; *Centinela Valley Secondary Teachers Assn. v. Centinela Valley Union High Sch. Dist.* (1974) 37 Cal.App.3d 35 [112 Cal.Rptr. 27] [purpose of former § 13336.5 (now § 44918), is to prevent districts from circumventing teachers' tenure rights by hiring substitutes].)

Although such persons are not specifically identified in the Code as temporary employees, they are treated in much the same way in that they may be dismissed without the formalities required for probationary and permanent employees in the event the program expires or is terminated, and their service does not count toward acquiring permanent status (unless they are reemployed the following year in a probationary position). (See *Zalac, supra,* 98 Cal.App.4th at pp. 842–846 [teacher properly classified as temporary employee for two years while working in categorically funded program should have been classified as probationary employee when rehired for third year in regular position after discontinuation of program]; *Schnee, supra,* 125 Cal.App.4th 555, 560–565 [disagreeing with *Zalac* dictum regarding when permanent status accrues].)

"The intent of former section 13329 [now § 44909] was 'to prevent a person from acquiring probationary status solely through teaching in a categorically funded program. This permits the hiring of qualified persons for categorically funded programs of undetermined duration without incurring responsibility to grant tenured status based on such teaching services alone.' [Citation.] The section 'was intended to give school districts flexibility in the operation of special educational programs to supplement their regular program and to relieve them from having a surplus of probationary or permanent teachers when project funds are terminated or cut back.' [Citation.]" (*Zalac, supra,* 98 Cal.App.4th at p. 845.)

Section 44909 provides in part: "The governing board of any school district may employ persons possessing an appropriate credential as certificated employees in programs and projects to perform services conducted under contract with public or private agencies, or categorically funded projects which are not required by federal or state statutes. The terms and conditions under which such persons are employed shall be mutually agreed upon by the employee and the governing board and such agreement shall be reduced to writing. Service pursuant to this section shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee unless (1) such person has served pursuant to this section for at least 75 percent of the number of days the regular schools of the district by which he is employed are maintained and (2) such person is *subsequently employed as a probationary employee* in a position requiring certification qualifications. Such persons may be employed for periods which are less than a full school year and *may be terminated at the expiration of the contract or specially funded project without regard to other requirements of this code respecting the termination of probationary or permanent employees other than Section 44918* [which concerns the reemployment rights of temporary employees, see fn. 19, *ante*]." (Italics added; see also *Schnee, supra,* 125 Cal.App.4th at p. 564 [teacher must serve for a

year as a probationary employee before prior temporary service may be counted toward permanent status].)

Thus, certificated teachers assigned to a categorically funded program may be laid off without the procedural formalities due a permanent and probationary employee *only* if the program has expired. (*Hart Federation of Teachers, supra,* 73 Cal.App.3d at pp. 215–216; *Zalac, supra,* 98 Cal.App.4th at p. 852.) Here, so far as the record discloses, none of the programs to which the 19 laid-off employees were assigned had expired.

### B. *Teacher Certification*

The Code directs that the Commission on Teacher Credentialing (CTC) "shall" issue only two types of credentials—teaching credentials and services credentials—and that it "may" issue an internship teaching or services credential. (§ 44250.) These credentials, in turn, have an " '[a]uthorization' " that identifies the subjects and circumstances in which the holder may teach, or the services he or she may render in the public schools. (§ 44203, subd. (d).) In the case of teaching credentials, these authorizations may provide for single subject or multiple subjects instruction, specialist instruction, or instruction in designated subjects. (§ 44256; see also §§ 44259 [single and multiple subjects credential], 44260 [designated subjects credential], 44265 [specialist credential].) Authorizations for services credentials include pupil personnel (counseling), health, library services, and administration. (§§ 44266–44270.)

In addition to what might be termed "regular," i.e., preliminary and professional (clear), credentials (see, e.g., §§ 44251, 44259; Cal. Code Regs., tit. 5, § 80001, subd. (k)), the Code authorizes the CTC to issue other, alternative forms of certification, including emergency permits (§ 44300 et seq.), preintern teaching certificates (§ 44305 et seq.), district intern certificates (§ 44325 et seq.), and university internship credentials (§ 44450 et seq.), and to grant waivers or temporary exemptions from some credential requirements (§ 44225, subd. (m)).

All 154 of the certificated employees in the present case who were classified by the District as temporary employees in the 2002–2003 school year possessed one or more of these alternative forms of certification, except a district intern certificate. The District claims this temporary classification necessarily followed from the fact they did not have regular credentials. For example, in his declaration submitted in the trial court setting out the District's position, Dennis Patrick, the assistant superintendent for personnel, stated as to each of the temporary employees that the employee had been classified as temporary because he or she "did not possess a credential that

*required* [them] to be employed and classified as a probationary employee." (Italics added.) With the single exception of the district intern certificate however, none of these credentials, regular or not, specifies how an employee working under the credential is to be classified.

 Section 44300 authorizes the CTC to issue and renew emergency teaching and specialist permits to persons who have earned a baccalaureate degree and passed a basic skills proficiency test (California Basic Educational Skills Test; CBEST), provided the school district in which the person is to be employed is able to show it has conducted a diligent search for, but been unable to recruit, a sufficient number of certificated teachers, "including teacher candidates pursuing full certification through internship, district internship, or other alternative routes established by the commission." (*Id.*, subd. (a)(3)(A); see *California Teachers Assn. v. Commission on Teacher Credentialing* (1992) 7 Cal.App.4th 1469, 1472–1474 [10 Cal.Rptr.2d 126] [providing statutory and regulatory history].)

In 1997, the Legislature created the California Preinternship Teaching Program (§ 44305), and amended section 44300 to express its intent that the CTC "shall issue preintern certificates in place of emergency teaching permits as sufficient resources are made available to school districts to provide services . . . to preinterns pursuing multiple subject or single subject teaching credentials." (§ 44300, subd. (b)(1).) Section 44305 authorizes the CTC to issue preintern certificates to persons who have earned a baccalaureate degree, passed the CBEST test, and completed the number of units set by the CTC for the "multiple subject or single subject preintern teaching certificate." (*Id.*, subd. (c).) It also requires that the CTC establish criteria for approving preintern teaching programs, which criteria shall include among other things "[d]emonstrated need, as indicated by the percentage of teachers in the district that have not completed basic credential requirements pursuant to state law." (*Id.*, subd. (d)(1).)

Section 44305, as since amended, provides further: "The preintern teaching certificate issued by the commission shall be valid for one year, but may be renewed for one additional year if the holder takes the appropriate subject matter examination . . . or is enrolled in a subject matter program approved by the commission . . . . A preintern teacher who passes the subject matter examination or completes a subject matter program in the first or second year of his or her preintern teaching *shall enroll in a district or university teaching internship or other approved university teaching credential program.* A preintern teaching certificate may be renewed for a third year if the employing school district, the cooperating college or university, and the preintern support the application for renewal." (§ 44305, subd. (b), as amended by Stats. 2001, ch. 342, § 23, italics added.)

The Legislature explained its rationale for replacing emergency teaching permits with preinternship teaching certificates as follows: "(a) The Legislature finds and declares all of the following: [¶] (1) Approximately 100,000 teachers are employed in the elementary schools of the state. [¶] (2) Approximately 1,100 of these teachers are in paid internships and receive systematic support and training as they advance toward full certification. [¶] (3) In the 1995–96 school year, over 6,400 elementary teachers held emergency permits only. Most of these teachers have little experience and no preparation for their teaching responsibilities. [¶] (4) As a result of the implementation of the Class Size Reduction program in the 1996–97 school year, the number of teachers with emergency permits in elementary classrooms is expected to reach 8,000 or more. [¶] (5) Most of the unprepared and untrained teachers with emergency permits are employed in urban schools where pupils need the best trained and most effective teachers. [¶] (6) As a general rule, teachers with emergency permits get very little training or support from the schools that employ them, in part because there are no resources directed to help this group of teachers. As a consequence, between 35 percent and 40 percent of all teachers with emergency permits in both elementary and secondary schools do not teach beyond the first year." (Stats. 1997, ch. 934, § 1.)

As noted, a preintern teacher who passes or completes a prescribed examination or subject matter program in the first or second year of preintern teaching "shall enroll in a district or university teaching internship or other approved university teaching credential program." (§ 44305, subd. (b).) The "university teaching internship" program to which this refers was established by the Teacher Education Internship Act of 1967, as amended. (§ 44450 et seq.) "District" internships, on the other hand, are governed by section 44325 et seq.

The Teacher Education Internship Act was enacted "to encourage the development and maintenance of [professional] preparation programs that are realistic and practical in content and theory and are directly related to the individual functions and responsibilities practitioners in the public schools of California face." (§ 44451.) Any school district may, with the approval of the CTC, establish an internship program in conjunction with a college or university. (§ 44452.) An applicant, to be admitted to the program, must have earned a baccalaureate degree, and passed a subject matter examination or completed an approved subject matter program. (§ 44453, subd. (a).)

"An internship credential authorizes the same service at the same levels as the regular [standard] credential authorizes." (§ 44454.) The certificate is issued initially for a period of two years, and may be renewed by the CTC. (§ 44455.)

The Teacher Education Internship Act does not specify how a university intern is to be classified, but it provides in section 44464 that he or she shall not be accorded the procedural rights of a probationary employee dismissed or suspended during the school year for cause or unsatisfactory performance. (See §§ 44948, 44948.3.) It does not, however, impose similar limitations with respect to dismissals and layoffs at the end of the school year. (See §§ 44949, 44955.) And it allows service as a university intern to count toward acquiring tenure if the teacher is rehired by the district after completing the internship program. "An intern shall not acquire tenure while serving on an internship credential. A person who, after completing a teaching internship program authorized pursuant to this article, is employed for at least one complete school year in a position requiring certification qualifications by the school district that employed the person as an intern during the immediately preceding school year and is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year, acquire tenure." (§ 44466.)

The part of this section following the first sentence—providing that the second year of service under a university internship credential may, in some circumstances, count toward the acquisition of permanent status under section 44929.21—was added in 1997. (Stats. 1997, ch. 138, § 2, eff. July 29, 1997; *Peoples v. San Diego Unified School Dist.* (2006) 138 Cal.App.4th 463 [41 Cal.Rptr.3d 383] (*Peoples*).) The Legislature explained the amendment as follows:

"(a) The Legislature finds and declares the following: [¶] (1) Qualified teachers are an important prerequisite for providing a quality education to all pupils. [¶] (2) The dramatic increase in the demand for new teachers caused by the Class Size Reduction Program coupled with recent legislation making intern programs available to more school districts has intensified the focus on teacher preparation and qualifications. [¶] (3) The requirements for the attainment of permanent status by interns who are participating in the two teacher intern programs [i.e., the district internship program and the university internship program] are inconsistent.

"(b) Therefore, *it is the intent of the Legislature to achieve consistency between the requirements for the attainment of permanent status by interns who are participating in* [*the two internship programs*]." (Stats. 1997, ch. 138, § 1, italics added.)

School districts are authorized to employ district interns by section 44830.3, which provides in part: "The governing board of any school district that maintains kindergarten or grades 1 to 12, inclusive, classes in bilingual education, or special education programs for pupils with mild and moderate

disabilities, may, in consultation with an accredited institution of higher education offering an approved program of pedagogical teacher preparation, employ persons authorized by the Commission on Teacher Credentialing to provide service as district interns to provide instruction to pupils in those grades or classes as a classroom teacher. The governing board shall require that each district intern be assisted and guided by a certificated employee selected through a competitive process adopted by the governing board . . . ." (§ 44830.3, subd. (a).)

 District intern certificates, issued by the CTC, are valid for two years and may be renewed for an additional year. (§ 44325, subd. (b).) They require that an applicant must have earned a baccalaureate degree, passed the CBEST test, and passed a subject matter examination administered by the CTC. (*Id.*, subd. (c).)

District interns must be classified as *probationary* employees. (§ 44885.5; *Welch*, *supra*, 91 Cal.App.4th at pp. 1429–1432.) Section 44885.5 provides:

"(a) Any school district shall classify as a probationary employee of the district any person who is employed as a district intern pursuant to Section 44830.3 and any person who has completed service in the district as a district intern pursuant to subdivision (b) of Section 44325 and Section 44830.3 and is reelected for the next succeeding school year to a position requiring certification qualifications.

"The governing board may dismiss or suspend employees classified as probationary employees pursuant to this subdivision in accordance with the procedures specified in Section 44948 [permitting district to dismiss or suspend probationary employee for cause during school year] or 44948.3 [requiring district to provide notice and right to appeal before dismissing or suspending probationary employee for cause or unsatisfactory performance during school year] as applicable.

"(b) Every certificated employee, who has completed service as a district intern pursuant to subdivision (b) of Section 44325 and pursuant to Section 44830.3 and who is further reelected and employed during the succeeding school year as described in subdivision (a) shall, upon reelection for the next succeeding school year, to a position requiring certification qualifications, be classified as and become a permanent employee of the district.

"The governing board shall notify the employee, on or before March 15 of the employee's last complete consecutive school year of probationary employment in a position requiring certification qualification as described in this subdivision, of the decision to reelect or not reelect the employee for the next

succeeding school year to this type of a position. In the event the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year."

In *Welch, supra*, 91 Cal.App.4th 1421, the court interpreted subdivision (a) of section 44885.5 to create two categories of probationary employees: those employed as district interns, and those reemployed by the same district after having completed the internship program but who have not yet acquired permanent status under subdivision (b). (*Welch, supra*, 91 Cal.App.4th at pp. 1430–1432.) It thereby rejected the argument that only those teachers who meet all three of these conditions must be classified as probationary employees. (*Ibid.*)

As we have said, the Legislature amended the statute (§ 44466) regarding tenure for *university interns* with the intent to make it consistent with the corresponding statute (§ 44885.5) regarding tenure for *district interns*. In *Peoples, supra*, 138 Cal.App.4th 463, the court relied in part on this expression of legislative intent in a case brought by a former university intern claiming permanent status. The teacher received a notice of dismissal in May of her fifth year of employment—one year under a preintern certificate, one year under a university internship credential, two years under the same credential after completing the internship program, and one year under a preliminary credential. The question was whether, pursuant to section 44666, her final year of employment under the internship credential should be counted as one of the two probationary years necessary to acquire permanent status. If so—i.e., if the teacher was in her second year for tenure purposes when she received the dismissal notice—the notice was late because it was not served by March 15, and she was effectively reelected as a permanent employee for the following year. (§ 44929.21, subd. (b).)

The school district argued that a university intern, unlike a district intern, is *not* a probationary employee, and so cannot earn credit toward permanent status while working under an internship credential. The appellate court found this argument misplaced. The real issue, the court said, was not whether a teacher is a probationary employee while working as a university intern, but whether, after working the next year under a regular credential (presumably as a probationary employee), the final internship year should be counted toward acquiring tenure. The court held pursuant to section 44666 that it should be, as it is for district interns under section 44885.5. (*Peoples, supra*, 138 Cal.App.4th at pp. 468–472.)

This result, while it appears to be correct, creates the anomalous situation in which university and district interns are treated the same for purposes of acquiring tenure after completing their internships, but are treated differently

while working as interns with respect to dismissal for cause during the school year. This observation brings us finally to the District's contention that, as a matter of policy, teachers should not enjoy the benefits and protections granted to probationary employees until they earn a regular credential.

## III. Policy Considerations

As we have seen, there are, generally speaking, three significant differences between certificated employees classified as probationary and their counterparts classified as temporary. First, probationary employees are afforded more procedural protections in the event a school district proposes to dismiss them for cause or, as was the case here, to lay them off as part of a workforce reduction. (Compare §§ 44949, 44955 [probationary employees] with § 44954 [temporary employees].) Second, service as a probationary employee generally counts toward the two consecutive years required to attain permanent status (tenure). (§ 44929.21, subd. (b).) A year of service as a temporary employee *may* be counted toward permanent status if the employee is reemployed the following year by the same district "in a position requiring certification qualifications." (§ 44909; see §§ 44917, 44920.) Third, the seniority of a certificated employee is determined as of the date the employee "first rendered paid service in a probationary position." (§ 44845.) Temporary employees do not accrue seniority.[20]

The first two of these differences, insofar as they relate at least to certificated employees holding emergency teaching permits, have been the subject of other published decisions. That is to say, the issue in these cases was not whether a teacher having only an emergency permit must be classified as a temporary employee (the principal issue in this case), but whether that teacher is entitled to some, if not all, of the benefits normally associated with probationary employees. The answer is "yes, and no," but it nonetheless sheds some light on the present controversy.

The first of the published cases was *Summerfield, supra,* 95 Cal.App.4th 1026. It was concerned with the application of section 44911, which states in its entirety:

---

[20] Tenure and seniority are distinct concepts. "Tenure has been stated to be a relation between the teacher and the school district, guaranteeing job security to the teacher, whereas seniority is basically a relation between teachers inter se, guaranteeing various privileges, including but not limited to, job security to the 'elder statesman.' The purpose of a statute giving tenure to teachers is to insure an efficient permanent staff of teachers whose members are not dependent on caprice for their positions as long as they conduct themselves properly and perform their duties efficiently and well. Establishing a test period for teachers to prove themselves before granting them tenure is essential to a good education system." (56 Cal.Jur.3d (2003) Schools, § 411, p. 757, fns. omitted.)

"Service by a person under a provisional credential shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district.

"This section shall not be applicable to teachers granted a one-year emergency credential under conditions specified in subdivision (b) of Section 44252 and subdivision (h) of Section 44830 [requiring passage of basic skills proficiency test, with certain exceptions, including one for teachers with out-of-state credentials]."

There no longer is such a thing as a "provisional credential," so the issue in *Summerfield* was whether section 44911 applied to bar persons working under an emergency teaching permit from earning credit toward permanent status.

Ms. Summerfield worked her first year as a temporary teacher under an emergency teaching permit. She was rehired the following year as a temporary teacher under a renewed permit, but was then reclassified as a probationary teacher. Toward the end of her second year, the district notified Summerfield that she had successfully completed her probationary period and would be classified as a permanent (tenured) teacher for the next school year. But a month later, the district changed its position and advised Summerfield her two years working under an emergency permit could not be counted toward tenure, and she could not be classified as a probationary teacher until she had obtained a regular credential. She did so, and was hired the third year as a first-year probationary teacher. Then, at the end of the third year, the district told Summerfield she was being dismissed and would not be rehired for the following year. She successfully petitioned for a writ of mandate directing the district to employ her as a permanent teacher, with accrued benefits and backpay. The district appealed in reliance on section 44911.[21] The appellate court, after tracing the statutory transformation of "provisional credentials" into "emergency credentials" into "emergency teaching permits," concluded section 44911 applies to the latter. (*Summerfield, supra*, 95 Cal.App.4th at pp. 1030–1032; see also *Golden Valley, supra*, 98 Cal.App.4th at pp. 379–383.) The court also concluded Summerfield did not fall within the

---

[21] But for section 44911, Summerfield evidently would have acquired tenure at the start of her third year of teaching, pursuant to section 44920, which states in part: "Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a vacant position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

A teacher who has worked two consecutive school years as a probationary employee, if reelected for the succeeding school year to a position requiring certification qualifications, "shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district." (§ 44929.21, subd. (b).)

exception in the second paragraph of section 44911, which the court construed to apply only to teachers with out-of-state credentials who are working in this state under an emergency credential while waiting to take and pass the CBEST test. (*Summerfield, supra,* 95 Cal.App.4th at pp. 1032–1035; see also *Elk Grove, supra,* 120 Cal.App.4th at pp. 567–568.)

Notably, the court observed in a footnote that the district, although it had at first "mistakenly" classified Summerfield as a probationary employee while she was working under an emergency permit in her second year, it was not bound by this classification because "it is well settled that the two-year probationary period for teachers is mandatory and may not be shortened by the advice or actions of a school district." (*Summerfield, supra,* 95 Cal.App.4th at p. 1035, fn. 6.) This observation would be called into question by the next published decision we will discuss.

*Golden Valley, supra,* 98 Cal.App.4th 369 is a decision by this court. The teacher in that case, Curran, worked her first year under an emergency teaching permit and was classified as a *probationary* employee. She was offered, and accepted, a contract for the following year, as a second-year probationary teacher, that was contingent on her taking certain steps to obtain a regular credential.[22] A dispute subsequently arose about whether she had

---

[22] In the present case, by contrast, the emergency-permitted teachers were classified as *temporary* employees, and signed contracts acknowledging their status as such. The District attempts to distinguish this case from *Golden Valley* on this basis. It asserts: "Under these circumstances, the Court of Appeal [in *Golden Valley*] was required to harmonize the provisions of Education Code section 44916 (failure to notify teacher as temporary means employee is probationary) [see fn. 8, *ante*] with the provisions of Education Code section 44911 (service under a provisional credential does not count towards probationary status)."

As will appear, this is a mischaracterization of our opinion in *Golden Valley*. First of all, our conclusion that an emergency-permitted teacher may be classified as a probationary employee was in no way based on section 44916. Secondly, and more importantly, we did not construe section 44911 (nor has any other court construed that section so far as we are aware) to say that "service under a provisional credential does not count towards probationary status."

The District's reasoning, as we understand it, is that since certificated employees working under a "provisional credential" do not earn credit toward permanent status (§ 44911), and since probationary employees *do* earn credit toward permanent status (§ 44929.21, subd. (b)), a person working under a provisional credential, i.e., less than a regular credential, must by definition be less than a regular employee, viz., a temporary one. But, as we explained in *Golden Valley*, an emergency-permitted teacher may possess some of the rights accorded probationary employees (dismissal protections) but not others (credit toward tenure). Were it otherwise, as we discuss below, section 44911 would be superfluous.

The District relies in part for its position on *Zalac, supra,* 98 Cal.App.4th 838, where, as we noted above, the court found a *regularly credentialed* teacher had been properly classified as a temporary employee during the two years she was assigned to a categorically funded program (§ 44909), but should have been reclassified as a probationary employee for the following (third) year, after the program was discontinued and she was assigned to a regular program. The District seems to say that the *Zalac* court found the teacher was a temporary employee because section 44909 contains the same sort of language as section 44911 regarding the

satisfied this contingency, and the district notified her in August (after the start of the school year) that it would not hire her. Curran filed a petition for writ of mandate claiming the district had failed to follow the statutory procedure required to dismiss a probationary employee during the school year. Such dismissals generally must be based on cause or unsatisfactory performance, and must provide the employee with a 30-day notice and opportunity for a hearing. (See § 44948.3.) The trial court denied Curran's petition, holding that teachers working under an emergency permit may not be classified as probationary employees (notwithstanding the fact the district had classified her that way).

Curran argued on appeal that, in the absence of any provision in the Code requiring teachers with emergency permits to be classified as temporary employees, the district was required to classify her as a probationary employee pursuant to section 44915 (teacher who has not been classified as permanent or substitute employee must be classified as probationary employee). We framed the issue this way: "The Education Code does not explicitly resolve this dispute. On one hand, the statutory provisions do not explicitly prohibit a teacher with an emergency permit from being classified as a probationary employee. On the other hand, no statutory provision explicitly delineates how teachers with emergency permits should be classified. Consequently, we must determine whether the general rule set forth in section 44915 concerning when a teacher should be classified as a probationary employee applies to a teacher with an emergency permit." (*Golden Valley*, *supra*, 98 Cal.App.4th at p. 377, fn. omitted.)

At the outset of our discussion, we acknowledged the footnote in *Summerfield* in which the court stated it had been a mistake for the district to classify the teacher in that case as a probationary employee while she was working under an emergency permit. The statement, we said, was dictum and so failed to resolve the issue before us.[23] (*Golden Valley*, *supra*, 98 Cal.App.4th at p. 377.)

---

accrual of credit toward permanent status. But the issue in *Zalac* was whether section 44909 applied to the teacher in her *third* year of teaching, after the categorical program was discontinued, and in particular whether the part of section 44909 applied that states a teacher in a categorical program may be terminated when the program expires without the formalities required for a permanent and probationary teacher. In other words, certificated employees in categorically funded programs are treated *like* temporary employees *for dismissal purposes* because section 44909 expressly requires that they be. *Zalac* does not support the proposition that teachers having less than a regular credential must be classified as temporary employees.

[23] The issue before the court in *Summerfield* was whether, in light of section 44911, a year of service as a temporary teacher, working under an emergency permit, may be deemed a year of probationary employment for purposes of acquiring tenure when the teacher is rehired by the same district for the following year "in a . . . position requiring certification qualifications." (§ 44920; fn. 21, *ante*.) To the extent the court's statement was meant to apply to a teacher

As we explained in *Golden Valley*, the Legislature first authorized the issuance of emergency credentials in 1943, during World War II, to compensate for the exodus of teachers to the war effort. It provided at the same time that service under the credential could not count toward acquiring permanent status. It did *not*, however, impose other comparable restrictions by, for example, excluding teachers working under emergency credentials from provisions governing the classification of probationary employees, from provisions establishing the minimum salaries of persons employed in positions requiring certification qualifications, or from the protections granted probationary employees in the event they are laid off or dismissed. *(Golden Valley, supra,* 98 Cal.App.4th at pp. 379–380.)

Also ·in 1943, the Legislature enacted what eventually would become section 44915. It provides now, as it did then, that school districts shall " 'classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees.' " *(Golden Valley, supra,* 98 Cal.App.4th at pp. 381–382.)

In 1947, the Legislature authorized the issuance of provisional credentials to give teachers working under an emergency credential the opportunity to qualify for a regular credential. Again, the Legislature provided that service under a provisional credential did not count toward acquiring permanent status, but again it imposed no restrictions on the probationary classification, minimum salary requirements, or dismissal procedures for persons working under the credential.

". . . As with the wording and structure of the provisions concerning emergency credentials, the wording and structure of the provisions concerning provisional credentials imply the holder of a provisional credential was eligible for probationary classification.

"The foregoing implications of legislative intent were strengthened in 1951 when the Legislature amended the minimum pay provisions and set a separate minimum annual salary for persons employed 'full time in a position requiring certification qualifications and serving under other than an emergency credential or provisional credential.' [Citation.] These amendments are further recognition by the Legislature that teachers serving under an emergency credential or provisional credential were subject to the rules generally

working under some other type of certification, or to a teacher working under an emergency permit for some purpose other than tenure, it was dictum. The issue before this court in *Golden Valley* was whether a teacher working under an emergency permit was entitled to the procedural protections accorded a probationary employee who is dismissed during the school year. (See *Golden Valley, supra,* 98 Cal.App.4th at p. 383, fn. 11.)

applicable to teachers employed in 'positions requiring certification qualifications,' *unless a specific exclusion was enacted.*" (*Golden Valley, supra,* 98 Cal.App.4th at p. 381, italics added.)

Amendments made to the Code in 1970 replaced its provisions for provisional credentials with what were then called emergency credentials, and these in turn were replaced in 1988 by emergency teaching and specialist permits. (*Summerfield, supra,* 95 Cal.App.4th at pp. 1030–1031; *California Teachers Assn. v. Commission on Teacher Credentialing, supra,* 7 Cal.App.4th at pp. 1472–1474.)

Notwithstanding these amendments, the provision (now § 44911) excluding service under a "provisional credential" from counting toward permanent status has not been changed, other than to add the second paragraph creating a narrow exception for teachers with out-of-state credentials working in this state under a "one-year emergency credential[]" while waiting to take and pass the CBEST test. (*Summerfield, supra,* 95 Cal.App.4th at pp. 1032–1035.)

As we observed in *Golden Valley,* it would not have been necessary to exclude emergency-permitted teachers from the Code's tenure provisions unless they otherwise would have been entitled to earn tenure, and by excluding them *only* from the tenure provisions, the Legislature presumably intended that they should remain eligible for the other benefits of probationary status.

". . . [T]his exclusion in section 44911 would not be necessary unless service by teachers with emergency permits was otherwise eligible to be counted towards permanent status. Because only service as a probationary employee counts towards permanent status (§ 44929.21, subd. (b)), the existence of the exclusion in section 44911 implies that teachers with emergency permits can be classified as probationary employees.

"The enactment of the second paragraph of section 44911 also implies the Legislature intended teachers with emergency permits to be eligible for classification as probationary employees. The second paragraph contains an exception [for certain emergency-credentialed teachers] to the exclusion set forth in the first paragraph of section 44911 . . . . The net effect of the exception to the exclusion is to place teachers within the scope of the exception back under the general rule of section 44929.21 . . . . Thus, teachers within the scope of the exception can only reap its benefits *if they were within the general rule in the first instance.* Because only employees classified as probationary employees are within the general rule, it follows that teachers holding emergency permits and satisfying the other conditions of the exception may be classified as probationary employees. In contrast,

Golden Valley's position that every teacher with an emergency permit is precluded from being classified as a probationary employee renders the second paragraph of section 44911 nugatory.

"Accordingly, we construe section 44915 to allow a teacher serving under an emergency permit to be classified as a probationary employee. This construction harmonizes section 44915 with sections 44911 and 44929.21 rather than rendering section 44911 superfluous. As a consequence of this construction, teachers serving under an emergency permit who satisfy the requirements of section 44915 are entitled to the statutory protections governing the dismissal of a probationary employee." (*Golden Valley, supra,* 98 Cal.App.4th at pp. 382–383, fn. omitted; see also *Motevalli v. Los Angeles Unified School Dist.* (2004) 122 Cal.App.4th 97, 109–110 [18 Cal.Rptr.3d 562] [emergency-permitted teacher classified as "provisional" nonetheless was probationary employee by operation of § 44915]; *Culbertson, supra,* 121 Cal.App.4th at p. 1399 [distinguishing *Golden Valley*]; *Fine, supra,* 116 Cal.App.4th at p. 1077, fn. 6 [discussing *Golden Valley*].)

The District, in the present case, notes that our decision in *Golden Valley* permits, but does not *require,* a school district to classify teachers having only emergency permits as probationary employees. It reasons from this premise that it therefore is not precluded from classifying those teachers (and, by extension, all other certificated employees having less than a regular credential) as temporary employees based entirely on their lack of such a credential. As should be evident from the foregoing discussion, however, this reasoning misconstrues the statutory classification scheme.

We could not have held in *Golden Valley* that emergency-permitted teachers *must* be classified as probationary employees because, as we have said, their classification, and the classification of all other certificated employees (with the single exception of district interns), is not determined by what type of credential or certification they have. If a certificated employee occupies a position the Code defines as temporary, he or she is a temporary employee; if it is not a position that requires temporary classification (or permanent or substitute), he or she is a probationary employee. (§ 44915.) The Code grants school districts no discretion to deviate from this statutory classification scheme. (*Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469, 474 [247 Cal.Rptr. 790] [school district's control over teacher classification ends where the rights afforded teachers by the Code begins].)

A probationary employee working under an emergency teaching or specialist permit does not accrue credit toward permanent status (§ 44911; *Summerfield, supra,* 95 Cal.App.4th 1026), but is entitled to the statutory

protections accorded such employees in the event of a dismissal for cause or unsatisfactory performance (§§ 44948, 44948.3 & 44949; *Golden Valley*, *supra*, 98 Cal.App.4th 369), or a layoff as the result of a reduction in the workforce (§ 44955).

A certificated employee working in a temporary position (e.g., as a long-term replacement teacher [§ 44920] or in a categorically funded program [§ 44909]), other than an employee working under an emergency teaching or specialist permit (§ 44300), may accrue credit toward permanent status if he or she is rehired the following year "as a probationary employee in a position requiring certification qualifications" (§ 44909), "in a position requiring certification qualifications" (§ 44917), "as a probationary employee" (§ 44918), or "in a vacant position requiring certification qualifications" (§ 44920). A temporary employee in a certificated position, who has served at least 75 percent of the school year, may be summarily released with no procedural formalities other than notice before the end of the school year (June 30). (§ 44954.)

The one remaining difference between temporary and probationary employees occupying positions requiring certification qualifications is the acquisition of seniority. The District and amicus curiae contend that any interpretation of the Code that permits certificated employees having less than a regular credential to be classified as probationary employees, and so to acquire seniority, would defeat the Code's preference for fully credentialed teachers. (See *Summerfield*, *supra*, 95 Cal.App.4th at p. 1035.) This argument envisions the possibility an emergency-permitted teacher may have more seniority than one with a regular credential. Thus, the District asserts: "Under the trial court's construction [of the Code], a school district would be required to lay off fully qualified teachers and retain teachers [with more seniority] who are not fully qualified (e.g., serving under emergency credentials [*sic*, emergency permits], waivers, pre-internship and university internship credentials), even though by law such persons cannot be hired unless the school district can demonstrate that a fully qualified teacher is not available."[24]

Section 44845 states: "Every probationary or permanent employee . . . shall be deemed to have been employed on the date upon which he [or she] first rendered paid service in a probationary position." (See *San Jose Teachers Assn. v. Allen*, *supra*, 144 Cal.App.3d at pp. 640–641 [statute applies to

---

[24] Section 44225.7 provides in part:

"(a) The [CTC] may approve a school district request for the assignment of an individual pursuant to subdivision (m) of Section 44225 [credential waiver] or Section 44300 [emergency permit] if the district has certified by an annual resolution of the governing board that it has made reasonable efforts to recruit a fully prepared teacher for the assignment. If a suitable fully prepared teacher is not available to the school district, the district shall make reasonable efforts

probationary service in children's center, i.e., in any position requiring certification qualifications, as well as to service in regular program].) If the Legislature had intended that only probationary and permanent employees *with a preliminary or clear credential* shall acquire seniority, it would not have been difficult to say so. We recognize in making this observation that very little in the Code seems to be stated in the easiest or most direct way. (*Haase, supra*, 113 Cal.App.3d at p. 917 ["Entry into the Education Code is painful"].) But once having determined that certificated employees with less than a regular credential must in certain circumstances be classified as probationary, we cannot then overlook the clear directive in section 44845 that, as probationary employees, they are entitled to accrue seniority.

## CONCLUSION

■ In summary, we hold the District's policy for classifying teachers and counselors as temporary employees, insofar as it is based on the fact they hold something less than a preliminary or professional (clear) credential, is invalid. We hold further that the District may classify as temporary employees only those persons who, by virtue of the position they occupy or the manner of service they perform, are defined or described as temporary employees in the Code. All certificated employees who are not so classified as temporary employees, and who are not properly classified under the Code as permanent or substitute employees, must be classified as probationary employees (§ 44915) and must be accorded the rights of probationary employees as provided in the Code, including the right to accrue seniority (§ 44845) and the rights to notice and a hearing in the event of a workforce reduction (§§ 44949, 44955).

It follows that those persons classified as temporary employees who should have been classified as probationary employees during the 2002–2003 school year, who were not given proper notice of the District's proposed workforce reduction, were effectively reemployed for the following school year.

---

to recruit an individual for the assignment, in the following order: [¶] (1) A candidate who is scheduled to complete initial preparation requirements within six months. [¶] (2) A candidate who is qualified to participate in an approved internship program in the region of the school district.

"(b) If a suitable individual who meets the priorities listed in subdivision (a) is not available to the school district, the district may, as a last resort, request approval for the assignment of a person who does not meet that criteria.

"(c) As the supply of teaching interns increases as a result of legislative efforts to expand the Alternative Certification Program, the commission shall notify school districts that state policy directs the assignment of interns to classrooms when available in a given region, with decreased reliance on persons serving on emergency permits or credential waivers. [¶] . . . [¶]

"(e) As used in this section, a 'fully prepared teacher' means an individual who has completed a teacher preparation program . . . ."

(§ 44955, subd. (c).) It also follows that the order in which those employees were laid off and reemployed, relative to the teachers and counselors classified by the District as probationary employees, must be redetermined based on the relative seniority dates of the misclassified temporary employees, and their layoff and reemployment priorities adjusted accordingly. The District's workforce layoffs for the 2003–2004 school year, of both probationary and misclassified temporary employees, therefore must be set aside. To the extent the trial court's judgment is consistent with these conclusions, we will affirm it.[25]

To the extent the trial court's judgment can be understood to direct the District to change to probationary (or permanent) the classification of every teacher or counselor it classified as temporary during the 2002–2003 school year, without regard to the person's individual situation, we will reverse it.[26]

---

[25] Given this result, it is not necessary for us to address BETA's claim challenging the layoffs of the misclassified temporary employees on the additional ground the layoffs were not expressly authorized by the District's February 25, 2003 resolution.

[26] The judgment applies to "all misclassified temporary employees," by which term the court appears to refer to all 119 teachers and counselors identified in the petition as having been classified by the District as temporary employees during the 2002–2003 school year. It provides in part: "1. Peremptory writs of mandate and administrative mandate shall issue forthwith . . . compelling [the District] . . . to reinstate all misclassified temporary teachers and counselors as probationary or permanent teachers as their service may entitle them, correct the seniority dates of all affected teachers without offset for credentials held, vacate the layoff resolution dated May 9, 2003, issue a new resolution rescinding the layoff, re-employ all laid-off teachers, and classify them as probationary or permanent as their service may entitle them, and forthwith pay all reinstated teachers full compensation, including salary, stipends, sick leave, health and retirement benefits of which each has been deprived since termination, plus interest at the legal rate on all sums due, in accordance with the Court's Statement of Decision, and particularly Paragraph 18 regarding damages."

Paragraph 18 of the statement of decision stated: "18. Forthwith, [the District] shall re-employ all teachers and counselors affected by this decision it has not already re-employed and shall pay all affected teachers and counselors, whether or not re-employed prior to the effective date of this order, full compensation, including salaries, stipends, sick leave, health and retirement benefits of which each has been deprived, offset by any wages received from comparable probationary employment during the period of compensation, or which probationary employment [the District] demonstrate[s] was reasonably available during such period, but of which [the] affected teachers did not avail themselves. [Citation.] While the Court finds that substantial justice suggests that the teacher's compensation claim should be adjusted by wages from comparable employment received during the pendency of this action, [the District's] failure to plead and prove failure of mitigation [citations] requires that there be no post-trial discovery regarding this issue. It was [the District's] burden to plead and prove the availability of other comparable employment and the failure of [BETA's] members to seek such work."

The judgment continues:

"4. Respondents shall be preliminarily and permanently enjoined from failing to consider all years of probationary employment in the calculation of seniority of teachers or counselors pursuant to Education Code section 44845 without any exclusion based upon credentials held

As appears from the foregoing discussion, the possible combinations of circumstances that can affect a person's classification, and the specific rights he or she enjoys within that classification, simply are too numerous and varied to say with certainty that every temporary employee was misclassified.

We also agree with the District's contention that any claims for backpay and benefits by misclassified temporary employees—those employees who, consistent with this opinion, should have been classified as probationary employees during the 2002–2003 school year, and who were for lack of proper notice effectively reelected as probationary employees for the 2003–2004 school year—must be limited to the 2003–2004 school year. As probationary employees, they had no right to continued employment beyond that year. (*Golden Valley, supra,* 98 Cal.App.4th at p. 386; *California Teachers Assn. v. Mendocino Unified School Dist.* (2001) 92 Cal.App.4th 522, 526–527 [111 Cal.Rptr.2d 879]; *Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 93–94 [82 Cal.Rptr.2d 452].) We will reverse the judgment insofar as it permits recovery for subsequent years.

Finally, we agree with the District that it should be permitted to conduct limited discovery with respect to its burden to prove mitigation of damages. While the judgment provides that the misclassified temporary employees' claims for lost compensation should be reduced by amounts they received or reasonably could have received from comparable employment, and it correctly assigns to the District the burden of proving those offsetting amounts, it then effectively denies the District the means to do so. This is not a situation where the District, having already been found to be liable for damages, failed to meet its burden; the damages phase of the proceeding has yet to occur. (Compare *Mayes v. Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 85–86 [154 Cal.Rptr. 43] [denying appellant's claim of failure to mitigate on appeal from judgment for damages] with *Tarquinio v. Franklin-McKinley School Dist.* (1979) 88 Cal.App.3d 832, 836–837 [152 Cal.Rptr. 108] [reversing judgment finding no liability with instructions to permit respondent to present evidence in mitigation of damages].) We will reverse the judgment on this ground as well.

---

by a teacher, and shall be preliminarily and permanently enjoined from classifying teachers or counselors as temporary unless the employee is hired within the circumstances specified in Education Code sections 44852, 44917, 44919, 44920, 44921, or 44986 . . . .

"5. The writs of mandate and the preliminary and permanent injunctions shall be stayed until judgment is final as a consequence of [the District's] anticipated appeal . . . .

"6. The Court shall retain jurisdiction pursuant to Paragraph 20 of the Statement of Decision to resolve disputes as to the seniority, classification, compensation, salary, sick leave, health and retirement benefits of the teachers, upon motion by [BETA]."

## DISPOSITION

The judgment is reversed as provided above, and affirmed in all other respects. The matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

The parties shall bear their own costs on appeal.

Harris, Acting P. J., and Wiseman, J., concurred.

A petition for a rehearing was denied January 9, 2007, and appellants' petition for review by the Supreme Court was denied April 11, 2007, S149762. George, C. J., did not participate therein.